COMMONWEALTH of Kentucky EDUCATION & HUMANITIES CABINET DEPARTMENT OF EDUCATION, Thomas C. Boysen (Now Wilmer S. Cody) Appointing Authority, Appellants,

v.

Carlene F. GOBERT, Donna M. DeSpain and Pamela L. Goins, Appellees.

No. 97–CA–0425–MR.

Court of Appeals of Kentucky.

April 3, 1998.

Case Ordered Published by Supreme Court Nov. 12, 1998.

John J. Garvey, III, Covington, Kevin M. Noland, Frankfort, for Appellants.

Richard M. Guarnieri, Frankfort, for Appellees.

Before: GUDGEL, Chief Judge; DYCHE and GUIDUGLI, Judges.

## OPINION

GUIDUGLI, Judge.

The Commonwealth of Kentucky Education & Humanities Cabinet Department of Education, Thomas C. Boysen (now Wilmer S. Cody) Appointing Authority (DOE) appeals from a judgment entered by the Franklin Circuit Court on January 28, 1997, which vacated several hiring decisions made by the DOE and ordered that the positions be classified and described as previously advertised. We affirm.

In January 1995, a branch manager position classified as Exceptional Children Program Manager II became open in the DOE's

Division of Exceptional Children Services (DECS). On January 20, 1995, the position was advertised through an internal vacancy announcement. The announcement set forth the minimum qualification requirements as follows:

> Graduate of a college or university with a masters degree and full certification by the Kentucky Department of Education in special education (exceptional children education) supplemented by six years of professional experience in the field of education including four years of experience in the area of special education or the education of exceptional children.

Although the requirements · specified that a masters degree was required, the last person who held the position had a law degree instead of a masters degree.

Appellees, Carlene Gobert (Gobert) and Pamela Goins (Goins), and three other individuals responded to the advertisement and were interviewed. Following the interviews, Dr. Hal Hayden (Dr. Hayden), Director of DECS, decided not to hire any of the applicants and re-advertised the position to attract a larger candidate pool. The position was advertised again on March 1, 1995, in an internal vacancy announcement.

Later in March 1995, a second position classified as Educational Administration Program Manager II became open. It was also advertised by an internal vacancy announcement which detailed the minimal qualifications as follows:

> · Graduate of a college or university with a masters degree in education or a closely related field supplemented by six years of professional experience in education, vocational education or a closely related field. Current Rank II or Rank I certification by the Dept. of Education will substitute for the required educational requirement. Additional professional experience in the field of education will substitute for the educational requirement on a year-for-year basis.

Both positions were advertised again on March 22, 1995. Seven additional applications were received, including those of appellee Donna DeSpain (DeSpain), Barbara Kibler (Kibler), and Renee Scott (Scott).

Additional interviews were conducted on April 13, 1995. Persons who had previously applied were informed that although they would not be re-interviewed, they would be considered for both positions.

Following completion of the interview process, Dr. Hayden eliminated Goins from consideration because she did not meet the minimum requirements for either position. DeSpain was eliminated from further consideration from both positions because she stated that she did not wish to supervise other employees, which was an integral part of both jobs. No reason was given as to why Gobert was not hired.

### The Hiring of Kibler

Twelve applicants, including Gobert, Goins, and Kibler, were considered for the Exceptional Children Program Manager II position.

Dr. Hayden decided to hire Kibler on April 15, 1995. Prior to being hired by Dr. Hayden, Kibler had been employed as a chief assistant public advocate with the Department of Public Advocacy for the last twelve years. Although Kibler had a law degree, she did not meet the minimum requirements as advertised for the position. Dr. Hayden believed that Kibler "stuck out ·like a sore thumb" as the best person for the position because it required monitoring and evaluating hearings, complaints, and litigation.

Realizing that Kibler did not meet the minimum requirements for the position, the DOE requested the Department of Personnel to determine whether she met the minimum requirements for the job classified title of Education Administration Program Manager II. Upon being advised that Kibler met the minimum qualifications for Education Administration Program Manager II, the DOE formally requested that the title of the position be changed from Exceptional Child Program Manager II to Education Administration Program Manager II on May 1, 1995. The DOE's request was approved by the Department of Personnel on May 16, 1995.

On May 17, 1995, the DOE requested the Department of Personnel to prepare a certi-

fied register of all applicants eligible for the position of Education Administration Program Manager II. The list was certified on May 23, 1995, and Kibler's name appeared on the list. The position was offered to Kibler on May 26, 1995, and she accepted.

### The Hiring of Scott

Twelve applicants, including Goins, Gobert, DeSpain and Scott were considered for the position of Education Administration Program Manager II. At the time of her application, Scott was not currently a state employee. Scott had a law degree and a masters in business administration.

Scott was hired by letter dated May 3, 1995. Her hiring was formalized pursuant to the terms of a memorandum of agreement (the memorandum) between the DOE and the Ohio Valley Education Consortium. Pursuant to the terms of the memorandum, Scott was hired as an unclassified employee to carry out the duties of the position. Personnel records show that the classified position remains vacant.

### The Personnel Board Hearing

Following the hiring of Kibler and Scott, Gobert, Goins, and DeSpain filed an appeal with the Kentucky Personnel Board (the Board). The appellees argued that the DOE disregarded applicable personnel laws, and requested that the hiring of Kibler and Scott be vacated and that the DOE be ordered to comply with all applicable personnel laws in filling the positions. The Board dismissed their appeals.

### The Franklin Circuit Court Proceedings

Appellees appealed the Board's decision to the Franklin Circuit Court. After considering the parties' arguments, the trial court held that: (1) the DOE acted improperly in requesting a title change before hiring Kibler; and (2) the DOE appointment of Scott was not made in accordance with applicable personnel laws. The trial court vacated the title change of the Exceptional Children Program Manager II position, vacated the hiring of Kibler and Scott, and ordered that both positions be "classified and described, including designation of its minimum qualifications,

as it was advertised in March 1995[.]" It is from this order that the DOE now appeals.

## I. WERE THE APPELLEES "PENALIZED" BY THE SELECTION PROCESS UTILIZED BY THE DOE?

■ Under Kentucky Revised Statutes (KRS) 18A.100, the Franklin Circuit Court is authorized to hear appeals of "any final order of the [personnel] board either upholding or invalidating the dismissal, demotion, suspension, or other penalization of a classified or an unclassified employee[.]" "Penalization" is defined in KRS 18A.005(17) as including "demotion, dismissal, suspension, fines and other disciplinary actions, involuntary transfers; salary adjustments; any action that diminishes the level, rank, discretion, or responsibility of an employee without proper cause, including a reclassification or reallocation; *and the abridgement or denial of other rights granted to state employees* [.]" (emphasis added).

The DOE argues that none of the appellees was penalized by the hiring of Kibler and Scott. The DOE contends that it actually broadened the rights of the appellees by considering all of them for both positions instead of the position each had applied for. The DOE also points to the problems associated with the lack of qualifications of Goins and the statements made by DeSpain during her interview and the lack of proof as to why it would have been better to hire Gobert as opposed to Scott or Kibler as proof that the appellees were not penalized. We disagree.

As to Goins, we cannot understand how the DOE can argue that she was not penalized by the hiring of Kibler. As shown by the facts, she was eliminated from further consideration due to her lack of qualifications while the DOE bent over backwards to hire Kibler, who also failed to meet the minimum requirements for the position she applied for. If this does not constitute an "abridgment or denial of other rights granted to state employees," we cannot imagine what would.

We also agree with the appellees' argument that they were penalized by the DOE's failure to follow applicable personnel laws in filling the two positions. The trial court

found that the DOE had failed to comply with applicable law· in hiring Kibler and Scott, and that this non-compliance resulted in penalization, not the DOE's failure to hire any of the appellees.

## II. DID THE TRIAL COURT ERR IN HOLDING THAT THE "TITLE CHANGE" PROCEDURE USED BY THE DOE WAS NOT AUTHORIZED BY STATE LAW?

As pointed out by the DOE, the Kentucky Department of Personnel has created a system under which each position in the state classified service is given a job classification title. The Board assigns all state agencies their employment positions and each position has a job classification title. *See* KRS 18A.110(7) and 101 KAR 2:020.

■  Once a job classification title has been assigned it can only be changed in several ways. If an existing position has been incorrectly allocated and there has been no significant change in job duties from those in effect at the last classification, the position is to be reallocated. KRS 18A.110(7)(a)1. *See also* KRS 18A.005(22). If material and permanent changes to the duties of an employee have occurred, the position may be reclassified. KRS 18A.110(7)(a)1 and 2. *See also* KRS 18A.005(23).

■  The method used by the DOE to change the title of the Exceptional Child Program Manager II position cannot be characterized as a reallocation or a reclassification. Instead, the DOE contends that it could change the job classification of a position by merely submitting a title change request to the Board as opposed to abolishing the old classification and establishing a new one. The DOE contends that this "one-step" procedure was authorized by Personnel Memo 95–3 dated February 9, 1995, which provides:

> Personnel Memo 92–36 provided that agencies would no longer be required to submit separate P–1's when abolishing and establishing positions at the same time. However, agencies were limited in using the Title Change Request (C–51) to the SAME class series.

> Effective immediately, Title Change Requests (C–51) may be submitted regardless of the classifications involved. The other criteria remain the same in that (1) the position numbers must remain the same; (2) a Position Description (PD) must be submitted for the new position and (3) the job location (county) must remain the same. Otherwise, the establishment/abolishment actions must be submitted separately.

The DOE contends it was entitled to use the "one-step" process set forth in the memorandum because the position was not filled at the time the request was made.

■  We agree with appellees that the "title change" policy outlined by the memorandum is invalid. As appellees argue, an administrative agency is prohibited from modifying or expanding any statute or administrative regulation by internal policy, memorandum, or other action and any attempt to do so is unenforceable, null and void. KRS 13A.130(1) and (2). As the personnel memo attempts to modify the reclassification procedure by allowing a mere title change as opposed to abolishment of an old position and establishment of a new one with a new classification, it is void.

## III. DID THE TRIAL COURT ERR IN DETERMINING THAT THE APPOINTMENT OF SCOTT WAS INVALID?

Under KRS 18A.115(1), all positions within state government are part of the classified service unless specifically excluded and are subject to personnel laws governing classified service. Under the procedure outlined in 101 KAR 2:066, an agency seeking to fill a vacant position must request a certified register of classified employees who are qualified for the position from the Department of Personnel. Upon receipt of the request, the Department must certify a list of all internal mobility candidates already employed by the state government as well as the top five candidates from outside state government. The agency then selects a person from the list of eligibles and informs the Department of Personnel of the selection.

It is clear that the DOE failed to follow this procedure in appointing Scott. Instead, the DOE maintains that statutory authority for the hiring of Scott exists from KRS 65.240(1), KRS 156.017, and the 1994 Budget Bill.

Under KRS 156.017, the DOE is permitted to contract with an educational cooperative such as OVEC for "services or assistance to accomplish goals and duties of the commissioner of education and the Department[.]" The portion of the 1994 Budget Bill relied on by the DOE provides "The Department of Education may fill through memorandum of agreement not more than fifty percent (50%) of its existing positions below the division director level with individuals employed as school administrators and educators in Kentucky." The DOE contends that the cited provision of the 1994 Budget Bill temporarily overrides the operation of KRS 18A.115. We disagree.

We agree with the DOE's contention that a budget is required to be enacted as a bill as opposed to a resolution and, as such, has the power to amend or repeal existing statutes. *Legislative Research Commission by and through Prather v. Brown,* Ky., 664 S.W.2d 907, 927–928 (1984). *See also, Kentucky River Authority v. City of Danville,* Ky.App., 932 S.W.2d 374 (1996) (holding that budget bill may amend existing statutes). Appellees' reliance on KRS 446.085 and *Com., ex rel. Armstrong v. Collins,* Ky., 709 S.W.2d 437, 443 (1986), which interpreted KRS 446.085, is misplaced as KRS 446.085 had already been repealed at the time the cause of action arose. The fact that it was in effect at the time the budget was enacted makes no difference.

However, as the trial court noted, "under KRS 446.145, a bill proposing to amend or to repeal an existing statute must specifically delineate the proposed changes and, if it purports to change the entire section, must list the statute by number." We have reviewed the passage from the 1994 Budget Bill and agree with the trial court that the dictates of KRS 446.145 were not followed with regard to this section. As the language from the budget bill does not mention KRS 18A.115(1), does not make any reference to repealing that particular statute, and does not refer to or expressly repeal any other existing statute, the budget bill cannot be construed to expressly repeal KRS 18A.115(1) or any other statute.

The DOE further argues that we should resort to "well-established principles of statutory construction" to iron out any existing conflict between KRS 18A.075(1), KRS 18A.115(1), the 1994 Budget Bill, KRS 156.017, and KRS 65.210 *et. seq.* The trial court rejected this argument and we adopt that portion of its opinion as set forth below as our own:

However, it is not entirely clear that KRS 18A.115 and KRS 156.017 actually control the same area of the law. The former delineates what positions within state government employment are considered classified and which are not. This establishes a considerable hierarchy within state government of benefits, privileges, promotions, and when these may be taken away. The latter establishes "regional service centers" which "primarily focus on the professional development of employees of school districts" and provides cooperation between the Department and the service centers. Because KRS 156.017 does not specifically provide for the usurpation of the classified employment system which forms the basis of rights and benefits of state employment, we decline to enter a judgment that would allow this system to be disturbed.

Having considered the parties' arguments on appeal, the judgment of the Franklin Circuit Court is affirmed.

All concur.