Dale TILLER, Appellant,

v.

UNIVERSITY OF KENTUCKY,
Appellee.

No. 1999–CA–002218–MR.

Court of Appeals of Kentucky.

Feb. 16, 2001.

Rehearing Denied April 6, 2001.

Discretionary Review Denied
Oct. 17, 2001.

Phillip C. Kimball, Samuel G. Hayward,
Louisville, KY, for Appellant.

Robert L. Roark, LaDonna L. Koebel, Paul Van Booven, Lexington, KY, for Appellee.

Before Chief Judge, GUDGEL; BARBER, and COMBS, Judges.

*OPINION*

BARBER, Judge:

This is a suit brought under the Kentucky Civil Rights Act, KRS Chapter 344, in which we conclude that the Appellant Dale Tiller (Tiller) has failed to carry the initial burden of proof required under state and federal law. This Court affirms the trial court's dismissal because no adverse employment decision has been shown. This Court finds, however, that Tiller has standing to sue, though this conclusion does not warrant reversal herein.

Tiller was an employee of Jefferson Community College (JCC). She had a bachelor's degree in education and a master's degree in counseling. Tiller was first employed by Jefferson Community College in 1980, in a mid-management position that involved acting as an advisor to new students, and conducting outreach programs to high school students. In 1986, Tiller made a move to the JCC Counseling Center, a job position commensurate with her master's degree in counseling. Tiller was one of five counselors who, in addition to their counseling work, annually taught a one-hour course for freshman students. The individual previously employed in the position Tiller was hired for had been a faculty member, rather than a mid-management employee. Tiller was not hired for the position as a faculty member, however, but retained her mid-management status.

It is uncontroverted that the job duties and requirements for Tiller and the other five employees are identical. However, Tiller worked longer hours due to required overtime for mid-management employees, had a lower salary, and did not have the same employment benefits because of her non-faculty status. Tiller desired to be made a faculty member because the salary was higher than that for a mid-management employee, and because the employment benefits for faculty members were better than those for mid-management employees.

Tiller provided the court with documentary evidence from 1993 through 1996 showing that the other faculty members and her immediate supervisor, the Counseling Program Coordinator, requested that she be moved to faculty status both for her own benefit and for the good of the program. Tiller's request to be made a faculty member was denied without explanation by JCC's President, Ronald Horvath. Dr. Horvath's successor, Dr. Green, also denied Tiller's request to be made a faculty member. When Tiller made the request to be changed to faculty status to the Chief Officer of the Kentucky Community Colleges, she was informed that the decision was up to JCC.

Tiller attributes the denial of her request to be made a faculty member to the fact that in 1986, at approximately the same time as she joined the Counseling Center staff, she had a child out of wedlock. She states that the JCC President was upset with her for having the child, and accused her of being a poor role model. Tiller alleges that JCC treated her differently from the faculty members with the same job duties, requiring her to work late hours that her colleagues did not work, and refusing her committee assignments and other duties that would increase her job standing and prestige. JCC refutes these allegations, and shows that Tiller was classified as a mid-management employee, which was why her salary, committee assignments and work hours were different from those of faculty members.

Appellee University of Kentucky (University) argues that Tiller was never told that she would be reclassified, and had no reasonable expectation of being reclassified as faculty. The University asserts that the only way Tiller could change her classification was by applying for and being hired in a faculty position. The University shows that Tiller applied for a faculty position only once, and later withdrew her application for the position. The University claims that Tiller's requested reclassification was otherwise not possible. Tiller denied ever being told by JCC that such a reclassification was not possible, but did not provide any evidence showing that a mid-management employee had ever been reclassified as a faculty member.

Tiller filed a civil complaint in Jefferson Circuit Court in 1997, alleging that she was denied an upgrade in employment status from mid-management to faculty due to her gender, in violation of KRS 344.040(1) and Section 2 of the Kentucky Constitution. The complaint stated that the sex discrimination claim was being prosecuted pursuant to the private suit provisions of KRS 344.450. The record contains Tiller's testimony regarding her perceived mistreatment, and her assertion that other JCC employees informed her that this was due to her status as a single mother.

The University moved for summary judgment arguing that Tiller could show no disparate treatment against her and in favor of any male. The University of Kentucky also argued that there was no evidence that JCC could upgrade Tiller as she requested. Tiller points to the downgrading of a faculty member to management status as evidence that JCC could grant her request. This evidence is insufficient to support her claim that she was improperly denied reclassification. In the absence of evidence showing that Tiller could have been reclassified as a faculty member, had JCC wanted to do so, this Court cannot find that she was wrongfully denied reclassification.

■ KRS 344.040(1) provides, in pertinent part, that it is an unlawful employment practice for an employer: "otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's sex." Tiller argues that she was an unwed mother solely by reason of her gender, and that the University's denial of her request to be made a faculty member affected the compensation, terms, conditions and privileges of her employment. KRS 344.030(8) defines the term, "discrimination on the basis of sex" to include pregnancy, childbirth, and other related conditions. Tiller asserts that she was discriminated against due to her being an unwed mother, a related condition as defined by KRS 344.030(8).

Under Kentucky law, discrimination is defined as: "[A]ny direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial or any other act or practice of differentiation or preference in the treatment of a person." KRS 344.010(5).

The trial court acknowledged that Tiller had presented evidence of negative treatment by JCC during and following the birth of her child. The trial court found that this discrimination was due to her status as an "unwed mother", rather than due to pregnancy and childbirth. Based upon this finding, the trial court held that she did not have an actionable claim under the Kentucky Civil Rights Act. The trial court found that "unwed mother" was not a protected category under the Kentucky Civil Rights Act.

■ Tiller argues that the discrimination began at the time of her pregnancy

and was based upon the pregnancy and ensuing childbirth. Religious or moral belief regarding parenthood has been found to violate the federal law relating to employment discrimination due to pregnancy or childbirth. In *Shafrir v. Assoc. of Reform Zionists of America*, 998 F.Supp. 355 (S.D.N.Y.1998), the court found that a genuine issue of fact prohibiting entry of summary judgment in the employer's favor existed under similar circumstances. In that case, an employee who had recently had a child was discriminated against by reason of her previous pregnancy and childbirth by an employer who did not believe that mothers of young children should work. This Court properly looks to federal law for guidance in implementing the Kentucky Civil Rights Act pursuant to *Meyers v. Chapman Printing Co.*, Ky., 840 S.W.2d 814 (1992). Clearly, therefore, Tiller's status as an "unwed mother" is sufficiently within the statutory definition to afford coverage, assuming the requisite burden of proof can be met.

■■■ The University argues that Tiller failed to make a *prima facie* showing of discrimination required by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this initial evidentiary burden, Tiller must show that 1) she is a member of a protected class; 2) that she suffered an adverse employment action; 3) that she is qualified for the position requested; and 4) that a similarly situated employee outside the protected classification was not subject to the adverse action. *Pierce v. Commonwealth Life Ins. Co.*, 825 F.Supp. 783 (E.D.Ky.1993). Tiller has shown that she was classified differently than other similarly situated employees, but has been unable to show that she suffered an adverse employment decision as a result of her status as an unwed mother. Tiller has shown that she was a member of a protected class, in that she was discriminated against due to pregnancy, childbirth and parenthood with regard to her treatment on the job, but has not proven that JCC's failure to reclassify her as a faculty member, rather than a mid-management employee, was possible. We find it persuasive that Tiller's effort to become a faculty member was not successful in the years before she became pregnant. For this reason, Tiller has not met the burden of proof required in this action.

The University argues that Tiller admitted she knew that she would need to apply for and be hired as a faculty member, and that the requested "upgrade" in employment status was not available. The University asserts that JCC was unable to change Tiller's job from a mid-management position to a faculty position. The University has identified a nondiscriminatory reason for the failure to reclassify, as required by law. *Id.* at 787. For this reason, no genuine issue of material fact exists barring entry of summary judgment in favor of the University.

The trial court granted the University's motion for summary judgment, and held that Tiller had not shown that her status as an unwed mother made her a member of a protected class under the Kentucky Civil Rights Act. We disagree with this finding, and hold that Tiller's status as an unwed mother does make her a member of a protected class. The trial court's ruling with regard to Tiller's status was therefore in error, but given our disposition of this matter does not warrant reversal.

The trial court also stated that Tiller had not shown that she was entitled to be made a faculty member. The trial court relied upon *Commonwealth, Education & Humanities Cabinet v. Gobert*, Ky.App., 979 S.W.2d 922 (1998), as showing that it is impossible for the college officials to reclassify Tiller's job position under the facts

in this case. That case holds that certain factors must be met before a job position may be reclassified. The *Gobert* Court stated:

> If an existing position has been incorrectly allocated and there has been no significant change in job duties from those in effect at the last classification, the position is to be reallocated. KRS 18A .110(7)(a)1. *See also* KRS 18A.005(22). If material and permanent changes to the duties of an employee have occurred, the position may be reclassified. KRS 18A.110(7)(a)1 and 2. *See also* KRS 18A.005(23).

979 S.W.2d at 926. In the present case, Tiller's predecessor performed exactly the same job duties and had the same responsibilities. For this reason, the law does not require reclassification of the position pursuant to KRS 18A.110(7)(a)(1) and KRS 18A.005(22).

■ Tiller also argues that the pay discrimination between herself and the other employees performing the same work is a violation of 29 USC Section 206(d)(1), The Fair Labor Standards Act, and its state law counterpart found in Section 344.040(*l* ) of the Kentucky Civil Rights Act. The trial court correctly held that because Tiller's co-employees included both men and women, this claim must fail. *See Henry v. Lennox Industries, Inc.*, 768 F.2d 746 (6th Cir.1985). The reason for the pay differential between Tiller and the other employees was not due to gender-based discrimination in employment classification, and thus cannot properly be held to be a Fair Labor Standards Act violation.

■ Lastly, the University argued that Tiller's claims were barred by the doctrine of sovereign immunity. The University argues that because Tiller's claims were, in essence, wage discrimination claims under KRS Chapter 337, they are barred by sovereign immunity. KRS Chapter 337 contains no waiver of immunity for wage discrimination claims against the Commonwealth. However, a review of the record shows that Tiller did not bring her claims under KRS Chapter 337, but under the Kentucky Civil Rights Act, for which sovereign immunity is expressly waived. *Department of Corrections v. Furr,* Ky., 23 S.W.3d 615 (2000). For this reason, the University's claim of immunity must fail.

For the foregoing reasons, we affirm the decision of the trial court.

ALL CONCUR.