James D. CARREER, Appellant,

v.

CABINET FOR HEALTH AND FAMILY SERVICES, John P. Hamm, Appointing Authority; and Kentucky Personnel Board, Appellees.

No. 2009–CA–000155–MR.

Court of Appeals of Kentucky.

June 18, 2010.

As Modified July 2, 2010.

Discretionary Review Denied by Supreme Court June 8, 2011.

James D. Carreer (argued), Shelbyville, KY, for appellant.

Alea Amber Arnett (argued), Frankfort, KY, for appellee.

Before VANMETER, Acting Chief Judge; ACREE and WINE, Judges.

## OPINION

WINE, Judge:

James D. Carreer appeals from an order of the Franklin Circuit Court which af-

firmed a decision by the Kentucky Personnel Board ("the Board") dismissing his claim against the Cabinet for Health and Family Services ("the Cabinet"). Carreer asserts that he was involuntarily transferred and demoted from his merit position without just cause. We agree with the circuit court, however, that the Cabinet acted within its statutory authority, that the Board afforded Carreer all the procedural due process to which he was entitled, and that the Cabinet presented substantial evidence to show just cause for its action. Hence, we affirm the circuit court's order affirming the Board.

### Factual and Procedural History

Prior to June 2004, Carreer was a classified merit employee who was employed as a Staff Assistant 9619, Grade 17, in the Commissioner's Office in the Department for Public Health ("DPH") within the Cabinet for Health Services. His duties at the time included serving as a personnel and legislative liaison to DPH Commissioner Dr. Rice Leach. On May 11, 2004, then-Governor Ernie Fletcher issued an executive order directing that the Cabinet for Health Services and the Cabinet for Families and Children be merged into the Cabinet for Health and Family Services.

As the merger and reorganization developed, Carreer's position was changed to "Internal Policy Analyst III," and was to be transferred to the new Division of Administration and Finance Management. In his new position, Carreer would perform the same functions and have the same responsibilities. However, he would no longer report to the DPH Commissioner, but would report to the division director of the Division of Administration and Finance Management.

Some time in late March 2004, Carreer discovered a draft of a confidential document which detailed the proposed reorganization of the DPH. The document had inadvertently been left at an office copier. Upon finding that his position was to be moved out of the new Commissioner's Office, he confronted Commissioner Leach and several other individuals with his concerns about how the reorganization would affect his position. At the time, Carreer was told that he would not be moved out of the Commissioner's Office. But when the merger and reorganization plans were finalized in June 2004, he was informed that his position was to be transferred to the new Division.

After the reorganization plans were announced, Commissioner Leach resigned as DPH Commissioner and Dr. William Hacker was appointed as Acting Commissioner on July 1, 2004. Sometime after June 25, 2004, Carreer met with Dr. John Burt, the new division director and Carreer's new supervisor in the Division of Administration and Finance Management. Burt told Carreer that he would keep his old office and duties, but he needed to rewrite his position description to be consistent with the new designation of Internal Policy Analyst III. On July 15, 2004, Commissioner Hacker told Carreer that he would be reporting to the Commissioner half of the time and to Division Director Burt the other half of the time. Commissioner Hacker also showed Carreer the new position description of an Internal Policy Analyst. After these meetings, Carreer tendered his notice of retirement, effective July 31, 2004.

On September 1, 2004, thirty days after Carreer retired, a new Staff Assistant position was established in the Office of the Health Department Commissioner. This new position was created to advise the Commissioner on handling bio-terrorism and to assist in monitoring $15 to $20 million of funds to counter bio-terrorism for the newly reorganized DPH.

After learning of the creation of this new position, Carreer brought this action before the Board on June 5, 2005. In his appeal, Carreer alleged that the Cabinet's action amounted to an involuntary transfer and a demotion. Consequently, he asserted that the action amounted to a penalization under Kentucky Revised Statute ("KRS") 18A.095 and that this action amounted to a constructive discharge. He sought reinstatement to his former position with back pay. After taking of discovery, the matter was submitted to the hearing officer for adjudication. The hearing officer issued findings of fact, conclusions of law, and a recommended order on September 11, 2007.

Since Carreer's new position had substantially the same duties and responsibilities and maintained the same pay, the hearing officer concluded that it was not a demotion. However, the hearing officer agreed with Carreer that the reclassification of his position amounted to an involuntary transfer under KRS 18A.005(37). The hearing officer further found that the involuntary transfer amounted to a penalization, KRS 18A.005(24), requiring the Cabinet to show that it was exercised for cause. However, the hearing officer concluded that the Cabinet had met that burden. The hearing officer found no evidence that Carreer had been specifically targeted for disparate treatment. Rather, the hearing officer found that the transfer was part of a lawfully enacted merger and reorganization of the two executive Cabinets. Finally, the hearing officer found that Carreer was not constructively discharged as a result of the involuntary transfer.

Thereafter, the Board adopted the hearing officer's findings of fact and conclusions of law. Carreer appealed from the Board's final order to the Franklin Circuit Court pursuant to KRS 13B.140. The circuit court affirmed the Board's order on November 26, 2008. Carreer now appeals to this Court.

**The Cabinet's failure to give written notice of the action was not made moot by Carreer's resignation**

■ As an initial matter, Carreer first argues that the circuit court erred in finding that the involuntary transfer was not technically a "penalization", because Carreer resigned before the transfer became effective. In its opinion and order, the circuit court concluded that Carreer was not technically penalized within the meaning of KRS 18A.005(24) because his resignation became effective before the transfer took effect. However, this conclusion conflicts with the Board's finding that Carreer was penalized within the meaning of the statute. He was subjected to an involuntary transfer. Furthermore, while his pay, duties and responsibilities remained the same, his position was changed to a lower grade. Thus, the trial court's contrary determination was clearly erroneous.

However, the issue does not affect the outcome of this appeal. Although the trial court erroneously found that Carreer *had not* been penalized, the Board found that Carreer *had* been penalized by the involuntary transfer. From this conclusion, the Board determined that the Cabinet had the burden of showing that there was just cause for the transfer. Furthermore, the circuit court addressed the other issues presented in Carreer's appeal even though it found that Carreer had not been penalized.

As thus presented, the question of when Carreer was penalized is relevant only to determine when the Cabinet was required to give him written notice and when the time for an appeal commenced. Since Carreer was penalized within the meaning of the statute, the Cabinet was required to give him written notice setting out the

reasons for the penalization and his right to appeal. KRS 18A.095(7) & (8). Ordinarily, an employee has sixty days to appeal from the penalization, running from the date he receives the written notice. KRS 18A.095(8)(d). If the employee has not received the required written notice, he still must file his appeal with the Board within one year from the date of the penalization or from the date that he reasonably should have known of the penalization. KRS 18A.095(29). *See also Com., Department of Revenue, Finance and Administration Cabinet v. McDonald*, 304 S.W.3d 62 (Ky.App.2009).

Here, the Cabinet gave Carreer oral notice of the reorganization on July 16, 2004. Since Carreer's resignation became effective as of July 31, 2004, the Cabinet did not give him the required written notice. The Cabinet maintains that it had sixty days to complete necessary personnel actions, 101 KAR 2:020 § 1, and that it was not required to give Carreer the written notice until the action became final. We need not reach this issue, however, because the Cabinet does not argue that Carreer's appeal was untimely. Thus, any question about the effect of Carreer's resignation on the Cabinet's obligation to give written notice is not relevant to this appeal.

### Standard of Review

■ Thus, we turn to the substantive issues presented in this appeal. Judicial review of an administrative decision is limited to a determination of whether the agency acted within the constraints of its statutory powers, whether the agency's procedures afforded procedural due process, and whether the agency's decision is supported by substantial evidence of record. *Bowling v. Natural Resources and Environmental Protection Cabinet*, 891 S.W.2d 406, 410 (Ky.App.1995). *See also*

KRS 13B.150(2). Carreer challenges the Board's order on each of these grounds.

### The Cabinet acted within its statutory authority

Carreer first argues that the Cabinet cannot reclassify his position except as provided by KRS 18A.110(7)(a). Since the Cabinet's attempt to reclassify his position did not comply with the statute, he maintains that the Cabinet's action exceeded its authority and therefore is void. *See also Commonwealth, Education & Humanities Cabinet Dept. of Education v. Gobert*, 979 S.W.2d 922, 926 (Ky.App.1998).

■ In support of this argument, Carreer relies on KRS 18A.110(7), which sets out the requirements for administrative regulations governing the classified service. Subsection (7)(a) requires, among other things, that the secretary shall allocate the position of every employee in the classified service to one of the classes in the plan. The subsection further provides that "[t]he secretary shall reallocate existing positions, after consultation with appointing authorities, when it is determined that they are incorrectly allocated, and there has been no substantial change in duties from those in effect when such positions were last classified." In *Gobert, supra*, this Court held that these findings are a prerequisite to any reclassification of a position, and any attempt to reclassify a position without making these findings is void. *Id.* at 926.

However, KRS 18A.110(7)(a) governs modification of job classifications with existing governmental agencies. Likewise, *Gobert* involved an attempt to change a job classification after the position had been posted. The present case, on the other hand, involves the reallocation and transfer of a position pursuant to a reorganization of state government organizational structures. KRS 12.028 specifically sets out the

procedure for implementing such changes. While such reorganizations are being implemented, the head of any department is authorized to "abolish unnecessary offices and positions, transfer officers and employees between positions, and change the duties, titles and compensation of existing offices and positions. . . ." KRS 12.060(2). The merger and reorganization of the Cabinet for Families and Children and the Cabinet for Health Services was accomplished pursuant to these sections. Consequently, the provisions of KRS 18A.110(7) were not applicable.

### The Board afforded Carreer his procedural due process rights

Carreer next argues that the Cabinet failed to afford him procedural due process. During the discovery process at the administrative level, Carreer submitted requests for admissions and interrogatories seeking to determine the identity of the person who made the decision to transfer his position. The Cabinet initially identified Deputy Secretary Shawn Crouch as the decision-maker. When Crouch stated that he was not the decision-maker, the Cabinet then identified Commissioner Leach as the decision-maker. Commissioner Leach testified that he did not make the decision, but he believed the decision had been made by Secretary Mark D. Birdwhistle. However, Secretary Birdwhistle testified that he did not make the decision to transfer Carreer's position.

■ Although other individuals testified about the process surrounding the organization, the Cabinet did not identify the specific individual who made the decision to transfer his position. Carreer maintains that he was entitled to this information to rebut the Cabinet's evidence that there was just cause for the transfer. Carreer contends that the Cabinet's failure to provide this information deprived him of his due process right to confront and cross-examine witnesses.

But as the circuit court noted, there was no evidence of any conscious or orchestrated move directed specifically toward Carreer or any particular state employee. The only evidence of record was that Carreer's position was transferred and reclassified as part of a reorganization that affected a number of employees. No single individual made the decision to transfer his position. Carreer was permitted to call or cross-examine all of the individuals who were involved with the reorganization process.[1] Carreer does not show that the Cabinet failed to disclose any other person

1. The Cabinet and Carreer called numerous witnesses during the administrative proceedings. In addition to Deputy Secretary Crouch, the Cabinet called five other individuals who were involved in the reorganization of the Cabinet: Trinta Cox, Personnel Branch Manager of the Office of Human Resource Management in the CHFS; Sarah Wilding, special assistant to the Health Department Commissioner; Dr. Hacker, acting Commissioner of Public Health; Dr. Burt, division director for the Department of Administration and Finance Management; and Donna Mulder, executive secretary to the Commissioner for Public Health. Carreer called Dr. Leach, Secretary Birdwhistle, and eight other witnesses: Charles Kendell, the Staff Assistant hired by the Commissioner's office after Carreer's retirement; Gloria S. Clark, Administrative Specialist in the Division of Administration and Financial Management; Samuel Burnette, former assistant Director of the Division of Public Implementation and Safety; Robert L. Nelson, Administrative Section Supervisor in the Department of Public Health; Beverly Stone, division secretary for local health operation in the Department of Public Health; Steve Davis, Deputy Commissioner for the Department of Public Health; Paul Royce, Assistant Director of Epidemiology and Health Planning; and Marvin Miller, Assistant Director of Adult and Child Health Improvement. Carreer also testified on his own behalf. Each of these witnesses was subject to cross-examination.

who was involved with the decision. Therefore, we conclude that the administrative proceedings satisfied Carreer's due process rights.

*There was substantial admissible evidence supporting the Board's finding that the transfer was for just cause*

■ Thus, we turn to the central question presented in this case: the sufficiency of the evidence supporting the Board's finding that Carreer's transfer was for just cause. There is no question that the reclassification of Carreer's position amounted to an involuntary transfer and a penalization within the meaning of KRS 18A.005.[2] A classified employee may not be penalized except for cause. KRS 18A.095(2). The Board found that the Cabinet had met its burden of proving that there was just cause for the penalization. In particular, the Board found that the restructuring and transfer of Carreer's position served a legitimate public purpose: to improve the economy and efficiency of operations within the merged Cabinet.

The reorganization strategy was designed to address several issues which existed in the former Cabinets. First, there were inconsistencies in the organizational structures of various departments. Second, there were multiple staff who were reporting directly to the Secretary and the Commissioner. The reorganization was designed to streamline the administrative structure and combine related divisions

and functions into a single division. Finally, the Board found no evidence that Carreer had been singled out for different treatment than other employees affected by the reorganization.

Carreer challenges the sufficiency of the evidence supporting these conclusions on two related grounds. First, since the actual decision-maker did not testify, Carreer argues that the Board's findings as to why he was transferred were based on hearsay. And for the same reason, he asserts that the Board's findings were based on conjecture and upon evidence outside of the record.

We agree with the circuit court that the Board's findings were supported by more than hearsay evidence or conjecture. As previously noted, the Cabinet and Carreer called all of the individuals who were involved with the reorganization. In addition to their testimony, the Cabinet introduced the Executive Order, organizational charts and forms of requests for personnel action. While no one person took responsibility for making the decision to transfer Carreer's position, the Cabinet fully documented its reasons for the reorganization. The Board found that the stated reasons for the reorganization were credible.

Nevertheless, Carreer contends that the Cabinet's justifications for the reorganization were mired in inconsistencies. He contends that the reorganization did not

---

2. Carreer's position as a Staff Assistant was classified as Grade 17. His proposed new position of Internal Policy Analyst III was classified as Grade 15. KRS 18A.005(11) defines "demotion" to mean "a change in the rank of an employee from a position in one (1) class to a position in another class having a lower minimum salary range or less discretion or responsibility." Carreer did not argue that the proposed change in his class would amount to a demotion, but only that the transfer would assign him to a lower-level division without direct access to the DPH Commis-

sioner. The Board disagreed, finding Carreer was not demoted because he would be performing substantially the same duties at the same pay. The only difference would be the supervisor to whom he reported. Since Carreer does not argue that the change in class alone would have constituted a demotion, we not address this issue. Moreover, since the Board found that Carreer was penalized within the meaning of KRS 18A.005(24), the Cabinet bore the burden of proof of showing cause for the action regardless of whether it was a demotion or an involuntary transfer.

consistently combine administrative and financial functions into a new division, but only for the Department for Public Health. He also notes that a new staff assistant position was created in the Commissioner's Office only thirty days after he resigned. Carreer argues that these inconsistencies demonstrate that the Cabinet's stated reasons for the reorganization were not worthy of credence.

Our standard of review for evaluating the circuit court's decision to uphold the Personnel Board's ruling is whether there is substantial evidence in the record to support the Board's findings. *Kentucky Commission on Human Rights v. Fraser*, 625 S.W.2d 852, 856 (Ky.1981). If there is substantial evidence to support the findings, they will be upheld, even though there may be conflicting evidence in the record. *Id.* It is important to note that "the fact that [we] may not have come to the same conclusion regarding the same findings of fact does not warrant substitution of [our] discretion for that of an administrative agency." *Kentucky Unemployment Insurance Commission v. Landmark Community Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 582 (Ky. 2002). As fact-finder, the Board is afforded great latitude in its evaluation of the evidence heard and the credibility of the witnesses appearing before it. *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 308 (Ky.1972). The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. KRS 13B.150.

It is not the role of the Board or the courts to judge the wisdom or the efficacy of the Cabinet's reorganization program. The only question is whether the Cabinet met its burden of proving that there was just cause for the reorganization, that it was not implemented in an arbitrary or capricious manner, and that it was not tainted by any improper motive. Although there was evidence to the contrary, we agree with the circuit court that there was substantial evidence supporting the Board's conclusion that the Cabinet met its burden of proof. The inconsistencies in how the plan was implemented merely go to the weight and credibility of the evidence, which was a matter for the Board to decide.

Furthermore, the Cabinet presented evidence explaining the subsequent creation of a Staff Assistant position in the DPH Commissioner's office. The new staff assistant position was created to assist the DPH Commissioner in the area of emergency preparedness. Charles Kendell was hired to fill the new position. His duties were to advise the Commissioner on matters pertaining to bio-terrorism, the relationship of the Cabinet to other cabinets, and divisions within the department. While some of Kendell's duties were similar to those which Carreer performed, the focus of the new position was different.

The creation of this new position does tend to undermine the Cabinet's contention that the reorganization would reduce the number of employees who reported directly to the Secretary or the DPH Commissioner. Likewise, the creation of the new position runs counter to the Cabinet's stated goal of grouping administrative and financial functions into a single division. However, the new position was significantly different from Carreer's position. And given the specialized duties of the position, the Cabinet stated a reasonable basis for directing that the new Staff Assistant would continue to report directly to the DPH Commissioner. Under the circumstances, we cannot find that this evidence would compel a finding that the Cabinet's decision was arbitrary or capricious. Therefore, the circuit court properly af-

firmed the Board's order dismissing Carreer's claims.

Accordingly, the November 25, 2008 opinion and order by the Franklin Circuit Court is affirmed.

ALL CONCUR.