**Betty MARCUM, Appellant**

v.

**CABINET FOR HEALTH AND FAMILY SERVICES,** Appellee

**NO. 2015-CA-000047-MR**

Court of Appeals of Kentucky.

RENDERED: JULY 15, 2016; 10:00 A.M.

BRIEFS FOR APPELLANT: Robert L. McClelland, Mark Maddox, Lexington, Kentucky

BRIEF FOR APPELLEE: Catherine York, Frankfort, Kentucky

BEFORE: COMBS, D. LAMBERT, AND VANMETER, JUDGES.

## OPINION

VANMETER, JUDGE:

In 2011 and 2012, Betty A. Marcum applied for Medicaid benefits, which were denied.[1] Marcum reapplied for benefits in

---

1. *Marcum v. Commonwealth, Cabinet for Health & Fam. Servs.*, 2014–CA–000487–MR, 2015 WL 1648028 (Ky.App. Apr. 10, 2015).

January 2013, and requested benefits retroactive to November 2012; she was ineligible for benefits until November 17, 2012, which is not at issue. The benefits were approved beginning February 1, 2013, with retroactive benefits denied, which is the subject of this appeal.

## I. Factual and Procedural Background

The circumstances involving the retroactive benefits were that Marcum owed $5,712.93 to Laurel Heights Nursing Home for November 2012 and $9,463.26 for January 2013. Marcum's daughter, Cathy Hall and her husband, Eddy Hall, paid these charges. In an attempt to recoup reimbursement from Medicaid, Marcum and her daughter, Cathy Hall, as Marcum's attorney-in-fact, signed two promissory notes acknowledging that Marcum owed Eddy and Cathy Hall for these amounts, which were paid to Laurel Heights.[2] Unsigned correspondence in the record includes an undated letter from Cathy Hall to "Alisha" stating, "Frankie Stivers, with McClelland & Assoc[.], said to give these two (2) Promissory Notes to you in reference to the Month [sic] of Nov. 2012 and Jan. 2013 when my husband and I . . . paid the Nursing Home for these two (2)

months in question[.]" The record is unclear whether the Halls made payment before or after the promissory notes were signed.

Following denial of retroactive benefits, Marcum requested an administrative hearing. Following the hearing, an Administrative Hearing Officer made Findings of Fact and entered the following Recommended Order in relevant part:

907 KAR[3] 1:005 § 1, Nonduplication of Payment, states, Nonduplication of payment as required by 42 CFR[4] 447.15 is assured as follows:

(1) When a recipient makes payment for a covered service, and the payment is accepted by the provider as either partial payment or payment in full for that service, no responsibility for reimbursement shall attach to the cabinet and no bill for the same service shall be paid by the cabinet.

In this case,[5] a Medicaid application was filed on behalf of Betty Marcum on January 17, 2013. Prior to the application being processed, Ms. Marcum's daughter paid the nursing home for services provided through January 31, 2013. Evidence shows that Ms. Marcum prom-

---

2. Hall paid the charges directly to Laurel Heights by check: check no. 1076, dated December 30, 2012, in the amount of $5,712.93, and check no. 1082, dated February 15, 2013, in the amount of $9,463.26. One Promissory Note stated: "I, Betty Marcum, owe Eddy and Cathy Hall the amount of $5,712.93 for the month of November, 2012, for payment made to Laurel Heights Nursing Home." Below the text is a signature line for Betty Marcum on which appears a scrawled "X" and below that is a signature line for Cathy Hall, over which appears the script, "Cathy Hall (POA)." The other Promissory Note was in most respects identical, with the exception of amount owed and month of charges.

3. Kentucky Administrative Regulations.

4. Code of Federal Regulations.

5. The case notes in the record indicate, the following:

Client's daughter, Judy [sic] Hall, paid bill for [Laurel Heights] for November, December & January resulting in her being private pay though 1/31/13. The family had expected her to be reimbursed by Medicaid so that Client could pay back her daughter. The daughter provided promissory notes as well as copies of the check that paid for the NF facility. The promissory notes are not dated prior to the payments (actually they aren't dated at all). There is no way to tell if payment agreement was set up before clients bill was paid or until after. The hearing is regarding the daughter's interest in being reimbursed for Client's care. As Client was private pay, retro coverage was not issued and Client became Medicaid effective 2/1/13.

ised to pay her daughter back for payments made to the nursing home. In addition, the nursing home agreed to reimburse Ms. Marcum's daughter if Medicaid was approved for the retro coverage months of November 2012 and December 2012 and the application month of January 2013.

The Agency testified that retro coverage could not be approved as there was no outstanding bills or money owed to the nursing home for the period of November 1, 2012 through January 31, 2013. The Agency considered this period as private pay since Ms. Marcum's daughter paid the nursing home and the nursing home accepted the payment.

Based on the evidence, Ms. Marcum's POA made payments on behalf of Betty Marcum (the recipient of nursing home care) for the period in question. The Cabinet will not duplicate payments. Therefore the Agency correctly determined the start date of Medicaid as February 1, 2013.

The Hearing Officer notes that in accordance with Federal regulation 42 USC[6] 1396 a recipient is an individual that receives medical assistance or services for uncompensated care. As such, payment for care was made on behalf of the recipient, Betty Marcum, by her daughter. The Cabinet as set forth by regulation is not responsible for reimbursement. Reimbursement will have to be worked out between Betty Marcum and her daughter.

The Recommended Order also contained the following language concerning exception and appeal rights:

**EXCEPTIONS:**

Any party may file written exceptions with the Appeal Board for Public Assistance to contest the Findings of Fact and Conclusions of Law in this Recommended Order. In any exceptions, the filing party must set out what findings or conclusions in the Recommended Order the party disagrees with, and explain why. The filing party may not submit additional evidence with exceptions, unless the Board allows it, or the evidence submitted was excluded from the hearing record.

Exceptions must be received by the Board no later than the close of business on the fifteenth (15th) calendar day from the date this Recommended Order was mailed. Failure to file exceptions may affect what issues may be considered by the Board or a court of law on appeal.

**REQUEST FOR REVIEW:**

Alternatively, the appellant, if not taking exception to any Finding of Fact or Conclusion of Law in this Recommended Order, and wishing only for the Board to review the record, may file a written request for review with the Board.

Requests for review must be received by the Board no later than the close of business on the twentieth (20th) calendar day from the date this Recommended Order was mailed. **Exceptions shall be deemed a request for review. Parties filing exceptions therefore do not need to file a separate request for review.** Filing only a request for review may affect what issues may be considered by the Board or a court of law on appeal.

. . .

**FINAL ORDER:**

After the period to file exceptions and requests for review is over, the Board will evaluate the Recommended Order, any exceptions and requests filed, and the official record, and shall issue a written Final Order. In the Final Order, the Board may accept the Recommended

6. United States Code.

Order and adopt it as its own Final Order, or it may reject or modify, in whole or in part, the Recommended Order, or it may remand the matter, in whole or in part, to the Hearing Officer for further proceedings as appropriate.

(emphasis added and changed from original). The final order further provided that, in relevant part, for appeal to the court,

The Board's final order is subject to judicial review under the provisions of KRS Chapter 13B. A party shall institute any appeal of a Final Order by filing a petition in the Circuit Court of venue, as provided in the agency's enabling statutes, within thirty (30) days after the Board's Final Order is mailed or delivered by personal service. ... The petition shall include the names and addresses of all parties to the proceeding and the agency involved, and shall state the grounds on which the party requests review. The petition shall be accompanied by a copy of the Board's Final Order.

Following the issuance of the proposed order, on February 4, 2014, Marcum filed a document titled, "Request for a De Novo Hearing; Objection to Exception and Appeal Rights Notice; and Exceptions to Findings of Fact and Conclusions of Law in Recommended Order Entered the 27th Day of January 2014." In these exceptions, Marcum contested that the hearing officer failed to find that "the funds used by Marcum were a loan from a third party and were not the funds of [Marcum]. Therefore, Marcum did not herself 'make a payment.' " Marcum argued that the funds paid by Hall were "encumbered" and were paid on condition of repayment. Marcum further argued that Medicaid applicants are placed at risk of discharge as a result of *King v. Butler Rest Home, Inc.*, 365 S.W.3d 561 (Ky.App.2011), in which this court held that a facility could discharge a resident for nonpayment without waiting

for the exhaustion of the appeals process for the denial of the resident's Medicaid application. As a result, Marcum argues that residents and their family members are placed in a "Catch-22" of (i) facing the possibility of discharge if the initial Medicaid application is denied, or (ii) paying, loaning or gifting the nursing home facilities charges with no possibility of reimbursement until the Cabinet is reversed or grants benefits.

After review of her motion, the Appeal Board entered its Final Order on the sole issue of whether the correct start date of Medicaid benefits was on February 1, 2013, as provided in accordance with 907 KAR 1:005. In this Final Order entered March 19, 2014, the Appeal Board stated:

The Appeal Board has reviewed the record in this matter, including information submitted subsequent to the issuance of the Recommended Order, and is of the opinion that the Recommended Order dated January 27, 2014 is correct. The Appeal Board concludes that the Findings of Fact and Conclusions of Law incorporated in the Recommended Order drafted by the Administrative Hearing Officer adequately set forth the facts and appropriately applied the law. Therefore, the Appeal Board adopts the Findings of Fact and Conclusions of Law as its own.

Marcum appealed the Appeals Board's Final Order to the Laurel Circuit Court. The circuit court affirmed the Appeals Board, and Marcum filed an appeal to this court.

## II. Standard of Review.

"Judicial review of an administrative decision is limited to a determination of whether the agency acted within the constraints of its statutory powers, whether the agency's procedures afforded procedural due process, and whether the

agency's decision is supported by substantial evidence of record." *Carreer v. Cabinet for Health & Family Servs.*, 339 S.W.3d 477, 481 (Ky.App.2010).

> [J]udicial review of administrative action is concerned with the question of arbitrariness. Section 2 of the Kentucky Constitution prohibits the exercise of arbitrary power over the "lives, liberty and property" of the citizens of the Commonwealth. In the interest of fairness and in order to comply with the mandate of Section 2, a party whose rights are affected by an administrative action is entitled to procedural due process. Moreover, administrative proceedings which affect a party's rights but do not afford an opportunity to be heard could likewise be classified as arbitrary.

*Kaelin v. City of Louisville*, 643 S.W.2d 590, 591 (Ky.1982) (citing *American Beauty Homes Corp. v. Louisville*, 379 S.W.2d 450 (Ky.1964)).

### III. Analysis

■ An administrative appeal of a denial of Medicaid benefits is governed by KRS[7] 205.231 and 907 KAR 1:560. The statute, KRS 205.231, sets forth, the following in relevant part:

> (2) Any applicant or recipient who is dissatisfied with the decision or delay in action on his application for public assistance or the amount granted to him may appeal to a hearing officer, except that an appeal and a hearing need not be granted if the sole issue is a federal or state law requiring an automatic change adversely affecting some or all recipients of the Kentucky medical assistance program so long as advance notice of the change, with an explanation of appeal rights, is provided to all affected recipients. However, a recipient may appeal whether the cabinet is accurately interpreting a change in federal or state law which may adversely affect the recipient. On receipt of an appeal, an administrative hearing shall be conducted in accordance with KRS Chapter 13B.
>
> . . . .
>
> (4) Any applicant or recipient who is dissatisfied with the decision of a hearing officer may appeal to the appeal board in the manner and form prescribed by administrative regulation. The board may on its own motion affirm, modify, or set aside any decision of a hearing officer on the basis of the evidence previously submitted in the case, or direct the taking of additional evidence, or may permit any of the parties to the decision to initiate further appeals before it. The board may remove itself or transfer to another hearing officer the proceedings on any appeal pending before a hearing officer. The board shall promptly notify the parties to any proceedings of its findings and decisions.
>
> . . . .
>
> (6) After a decision by the appeal board, any party aggrieved by the decision may seek judicial review of the decision by filing a petition in the Circuit Court of the county in which the petitioner resides, in accordance with KRS 13B.140, 13B.150, and 13B.160.

Pursuant to KRS 205.231(5), 907 KAR 1:560 was promulgated to govern Medicaid eligibility, and any hearing and appeal process. With respect to the hearing, decision

---

7.  Kentucky Revised Statutes.

and appeal, Section 14 of this regulation provides, in pertinent part:

> (1) An appeal **shall** be acknowledged in writing to the applicant or recipient and his authorized representative.
>
> (2) The acknowledgment **shall** offer the opportunity to file a brief **or** submit new and additional proof and state the tentative date on which the board shall consider the appeal.

(emphasis added). Marcum argues, and the Cabinet concedes, that it failed to comply with this provision in that Marcum's appeal was not acknowledged in writing and no offer was made for an opportunity to file a brief or submit new and additional proof, and no tentative date on which the board shall consider the appeal was given.

Furthermore, in its own Recommended Order, the Cabinet stated that exceptions were to be treated as a request for review. As provided in Section 15 of 907 KAR 1:560, in relevant part,

> (1) An appeal to the appeal board shall be considered upon the records of the department and the evidence or exhibits introduced before the hearing officer **unless** the applicant, recipient or authorized representative specifically requests permission to file additional proof.
>
> (2) If an appeal is being considered on the record, a party may present a written argument and at the appeal board's discretion, be allowed to present an oral argument.

(emphasis added). As a result of the Appeal Board's failure to provide written acknowledgment of her appeal, Marcum did not have an opportunity to file a brief or submit new and additional proof.

KRS 13B.150(2)(a) requires a court to reverse and remand if the final order is "[i]n violation of constitutional or statutory provisions[.]" While the circuit court held that Marcum received sufficient due process under the circumstances, for us to affirm ignores clear provisions of the administrative procedure set up for Medicaid appeals.

### IV. Conclusion.

We therefore reverse the Laurel Circuit Court's order, and remand for a decision consistent with this opinion.

ALL CONCUR.