McCRACKEN COUNTY FISCAL
COURT, Appellant,

v.

GRAVES, J.W., Judge of Division
1 of McCracken Circuit
Court, Appellee,

and

DEPARTMENT FOR PUBLIC ADVO-
CACY, Commonwealth of Ken-
tucky, et al., Appellant,

v.

SHADOAN, William L., Circuit Court
Judge, et al., Appellee.

Nos. 92–SC–762–TG, 92–SC–826–TG.

Supreme Court of Kentucky.

Oct. 27, 1994.

Fred H. Grimes, Jr., County Atty., Paducah, William F. Ivers, Jr., County Atty., New Castle, William L. Shadoan, Circuit Judge, Wickliffe, for appellants.

Joseph Vincent Aprile, II, Dept. for Public Advocacy, Frankfort, Charlotte Scott, Cynthia E. Sanderson, Paducah, for appellees.

STEPHENS, Chief Justice.

The present cases are about "who must pay?" In this consolidated appeal, we are asked to reexamine the question of who bears financial responsibility for the payment of expert witness fees incurred on behalf of indigent defendants. Although we believe this question to have been explicitly answered by our opinion in *Perry County Fiscal Court v. Commonwealth*, Ky., 674 S.W.2d 954 (1984), we have revisited the arguments and with this opinion intend to lay the matter to rest. In connection with this, we shall also address the issue, raised by the latter case only, of a trial court's responsibility in determining what expenses are "reasonable and necessary" so as to give effect to the overall purpose of KRS Chapter 31.

## I.  BACKGROUND

In the first case appellants, McCracken County and the McCracken County Fiscal Court, take appeal from the ruling of McCracken County Circuit Judge, Honorable J.W. Graves, ordering the fiscal court to pay investigative costs and psychological examination fees totalling $4,155.00 on behalf of an indigent capital defendant, Theodore David Stout. Stout has since pled guilty which, technically, renders this case moot. However, because this appears to be an issue of continuing controversy and is a question of significant public importance, this Court chooses to review it with the following companion case.

The second case, *Department for Public Advocacy v. Shadoan*, implicates the same issue in reverse. In this action, the Department of Public Advocacy (DPA) appeals from a ruling of the Jefferson Circuit Court which orders *DPA* to assume financial responsibility for a portion of the fees owed to an expert witness retained on behalf of capital defendant, Parramore Lee Sanborn. The Henry County Fiscal Court did not file a cross-appeal challenging the judge's order that it should pay part of the fees. This case also calls for the resolution of a second issue

which provides the Court with an opportunity to offer guidance to trial courts in allocating indigent defendant expense liability under the facts of a particular case.

## II. *THE PRECEDENT*

In *Perry County, supra,* we considered the proper statutory construction of KRS 31.185, which mandates that the county government must fund court-authorized use of private facilities for the evaluation of evidence on behalf of indigent defendants. KRS 31.185 reads:

> **Facilities for defending attorney.**—Any defending attorney operating under the provisions of this chapter is entitled to use the same state facilities for the evaluation of evidence as are available to the attorney representing the Commonwealth. If he considers their use impractical, the court concerned may authorize the use of private facilities to be paid for on court order by the county.

The narrow issue before us was whether the term, "facilities" in the statute should be construed to include *individuals* who evaluate evidence, as well as buildings, laboratories, and equipment, etc. This Court held, based upon "the public policy already expressed by the General Assembly [in enacting KRS 31.185], that 'facilities' in this statute is intended to embrace ... and include individuals who are trained to evaluate evidence." *Perry County* at 956.

Although in *Perry County,* the general issue of "who must pay" was not directly involved in that particular proceeding, the Court permitted both the Office of Public Advocacy and the Perry Fiscal Court to intervene and submit briefs so the question might be more fully developed. *Id.* at 956. On this issue, a unanimous Court found no ambiguity and stated its conclusion succinctly: "It is clear that the trial court may authorize the payment of fees for necessary expert witnesses by the *county,* not the Department of Public Advocacy, in all counties unless the circumstances are such that KRS 31.200(3) would require otherwise." *Id.* at 957. (Emphasis in original).

## III. *WHO MUST PAY?*

There is abundant authority, both statutory and in our cases, for the result reached in *Perry County,* a holding which we now reaffirm. Unless the law expressly directs otherwise, it is the county government, not the state Department of Public Advocacy, which bears liability for court-authorized expenses incurred in the representation of an indigent defendant.

### A. The Statutes

We begin with postulates found early in Chapter 31 which describe *who* are the needy and to *what* they are entitled, for this ultimately sheds light on the legislature's policy of *who must pay.* Within the scheme set up by our General Assembly, a "needy" or an "indigent" defendant is "a person who at the time his need is determined is unable to provide for the payment of an attorney and all other necessary expenses of representation." KRS 31.100(3). An indigent defendant having been formally charged of a serious crime is entitled: "(a) [t]o be represented by an attorney to the same extent as a person having his own counsel is so entitled; and (b) [t]o be provided with the necessary services and facilities of representation including investigation and other preparation." KRS 31.110(1). Now, who must pay? For the answer, we look back to the statutes.

The language of KRS 31.185, *supra,* is directly on point and cannot be ignored. "When the words of the statute are clear and unambiguous and express the legislative intent, there is no room for construction or interpretation and the statute must be given its effect as written." *Lincoln County Fiscal Court v. Department of Public Advocacy,* Ky., 794 S.W.2d 162, 163 (1990), citing with approval *Griffin v. City of Bowling Green,* Ky., 458 S.W.2d 456 (1970). Once again, the statute reads:

> **Facilities for defending attorney.**—Any defending attorney operating under the provisions of this chapter is entitled to use the same state facilities for the evaluation of evidence as are available to the attorney representing the Commonwealth. If he considers their use impractical, the court concerned may authorize the use of private

facilities to be paid for on court order by the county.

The statute is clear on its face, and we believe, susceptible of no other interpretation. It expressly states that once authorized, "the use of private facilities [is] to be paid for on court order *by the county*." (Emphasis added). The statute and its meaning are uncluttered by further words of limitation or alternatives for liability. It says what it means and means what it says.

■ A second statute also provides persuasive authority for the proposition we now maintain. KRS 31.200 is entitled, "Expenses chargeable to county and to public advocate.—" In its entirety, it states:

(1) Subject to KRS 31.190, any direct expense, including the cost of a transcript or bystander's bill of exceptions or other substitute for a transcript that is necessarily incurred in representing a needy person under this chapter, is a charge against the county on behalf of which the service is performed.

(2) If two (2) or more counties jointly establish an office for public advocacy, the expenses not otherwise allocable among the participating counties under subsection (1) shall be allocated, unless the counties otherwise agree, on the basis of population according to the most recent decennial census.

(3) Expenses incurred in the representation of needy persons confined in a state correctional institution shall be borne by the state Department of Public Advocacy.

In *Kordenbrock v. Commonwealth*, Ky., 700 S.W.2d 384 (1985), the Court had occasion to address KRS 31.200. In that case, we upheld the trial court's decision not to compel the fiscal court to pay a defense psychiatrist's fees until his official report had been filed. The key to the result, however, was that the report had not been filed. That the expense was properly chargeable to the county was not a matter open to question. "The trial court had undoubted authority to order the fiscal court to pay the fees ordered." *Id.* at 386. More recently we con-

firmed that conclusion. "The payment of the expenses by the local fiscal court would be in furtherance of its duty to provide legal representation to indigents, as is their constitutional right." [1] *Kenton–Gallatin–Boone Public Defender, Inc. v. Stephens*, Ky., 819 S.W.2d 37, 38 (1991).

In the face of this decisional precedent, McCracken County contends that the general rule of liability found in *Perry County* is just plain wrong. The rule derives, it suggests, from an erroneous reading, on the part of this Court, of KRS 31.185 and KRS 31.200 in which the Court has ignored the impact which Chapter 31's "elective county plan" scheme has on who must pay.

KRS 31.160 provides that any county, city or district has the option of adopting a local plan for the representation of needy defendants. A county may elect to provide representation by private contract, by establishing a local office for public advocacy or a combination of these alternatives. KRS 31.160(1)(a); 31.160(1)(b); 31.160(1)(c). A county may also join with a city located within the county or with one or more counties within its judicial district to provide such a plan. KRS 31.160(2). If a county so elects, the procedures by which such an office is set up, operates and is maintained are set forth in KRS 31.165 through KRS 31.200. In KRS 31.190(1), the legislature explicitly mandates that those units which have (severally or jointly) elected to provide a plan of representation "shall annually appropriate enough money to administer the program of representation it has elected under KRS 31.160."

Emphasizing the permissive nature of such an undertaking, McCracken County stresses that it has *not elected* to provide locally for representation of indigent defendants, a fact which fuels its essential argument. It steadfastly maintains that only those counties which have *elected* pursuant to KRS 31.160 to provide local representation are properly subject to the mandate of *Perry County*, and

1. As will be addressed below, the fact that these counties had elected to jointly provide locally for representation of indigent defendants under KRS 31.160, in no way alters or dilutes the import of the Court's declaration of who must pay.

the language in KRS 31.185 and KRS 31.200 which directs that the county must pay.

The focus of this argument put forth by McCracken County is policy-oriented. McCracken County observes that "many of our counties, including McCracken County, which have budgeted no funds for a [KRS 31.160] program cannot stand the onslaught on their county general funds by orders of a trial judge directing large sums of money be paid in the defense of indigents." It goes on to ask, "Should these counties now be prepared to underwrite the interminable appeals in the more serious criminal convictions?"

To these rather "deja vu" arguments, we remind the fiscal court that we have both heard and considered these concerns before and we are not unsympathetic. But however meritorious as sound public policy, it is an argument more properly to be addressed in the halls of the General Assembly. As we stated in *Kordenbrock*, "whether this statute is or is not unfair is irrelevant. It is the legislature who determines this." *Kordenbrock, supra,* at 386.

Additionally, we respectfully point out that the "poverty" theory loses force and appeal in this Court when considered in light of the fact that *counties have been on notice as to their responsibilities for indigent expenses for ten years, since Perry County was decided in 1984.* Thus if the fiscal court of McCracken County (and other fiscal courts) find themselves to be in a quandry at this point, it is a predicament of its own persuasion that *Perry County* did not mean what it explicitly says.

McCracken County's other argument is statutory in nature. The county places great weight on the prefatory language that KRS 31.200(1) is *"Subject to KRS 31.190"* (emphasis added). It insists that these are words of limitation which absolve counties which have not elected to fund a program under KRS 31.160 from any financial liability for indigent defense expenses. We disagree for several reasons.

KRS 31.200 is a simple allocation statute. It mandates how liability for expenses "necessarily incurred in representing a needy person under this chapter" is to be allocated under three circumstances: when a county has joined with a city to provide a plan, when two or more counties have joined to adopt a plan and when a defendant is confined in a state correctional institute.

It is our opinion that "Subject to KRS 31.190" prefaces subsection (1) (in KRS 31.200) only to identify the proper allocation procedure in the circumstance whereby a county has joined with a city to provide a program of representation.[2] We agree with the appellee herein that the juxtaposition of KRS 31.190 and KRS 31.200(1) creates the following reading of KRS 31.200(1): "Subject to [the contractual financial liability of any cities within the county which are providing jointly with the county KRS Chapter 31 representation] any direct expense ... that is necessarily incurred in representing a needy person ... is a charge against the county on behalf of which the service is performed." KRS 31.200(1).

This construction, as opposed to the reading urged by McCracken County, is more comfortably consistent with the remaining subsections of KRS 31.200 and the statute as a whole. It is also in harmony with KRS 31.185 and what we consider to be the intent expressed by the legislature in its enactment of Chapter 31, as a whole. There are a variety of reasons why any county[3] might elect, under KRS 31.160 et seq., to provide a local public advocate's program. A county may wish to maintain an office to provide jobs for its local attorneys, or it may wish to simply "take care of its own business," avoiding excessive state bureaucratic entanglement. Whatever the reasons behind a county's choice *to participate,* we emphatically do not believe the legislature intended, by enacting a permissive scheme, to absolutely relieve

**2.** KRS 31.190(1) reads: The fiscal count of each county *together with any cities* involved shall annually appropriate enough money to administer the program of representation that it has elected. Under KRS 31.160. (Emphasis added).

**3.** Except for counties with a "judicial district containing ten (10) or more circuit judges which *shall* establish and maintain an office for district public advocacy ..." KRS 31.060. (Emphasis added).

any county which chooses not to participate from all financial liability incurred in the representation of needy defendants.

■ Under our principles of due process and under Chapter 31, constitutionally adequate legal representation entails certain necessary expenses. This Court holds that whether indigent defendants are represented by local public advocates (under a KRS 31.160 plan) or by state public advocates is irrelevant to a county's liability to pay for those expenses which a trial court considers to be reasonable and necessary, unless a statute directs otherwise.[4]

In the second case, the state Department for Public Advocacy challenges an order of the Honorable William L. Shadoan, presiding as special trial judge in Jefferson Circuit Court. The order directs DPA to bear responsibility for a portion of the fee generated by an expert psychologist employed on behalf of defendant Parramore Lee Sanborn. The "who must pay" issue raised in DPA's brief and at oral argument can be restated to ask: by what right of authority can the trial judge assess DPA for this expense?

The May 24, 1991 order from which DPA appeals directs that of the $2,310.00 total fee owed to Dr. Phillip Johnson, the Henry County Fiscal Court shall be responsible for $1,280.00 and that the $1,030.00 "balance of this fee will have to be recovered from someone other than the Fiscal Court of Henry County, that being the attorneys representing the defendant or the Department of Public Advocacy." Citing KRS 31.185 and *Perry County*, DPA argues that the trial court's order is clearly erroneous and must be reversed as a matter of law. Unfortunately, this case is not so clear-cut.

The general propositions of law with which DPA supports the result it urges are correct and certainly in conformity with the law as this Court has stated it, including in the preceding portion of this opinion. *Perry County*; KRS 31.185; KRS 31.200(1). However, this case did not occur in a vacuum. After careful review of the record, we find the disposition of this case to turn on an issue more specific than the issue resolved above.

■ Case law clearly sets forth that for the expenditure of county funds, under KRS 31.185, to be authorized by the trial court, the services provided must be both reasonable and necessary. *Simmons v. Commonwealth*, Ky., 746 S.W.2d 393 (1988); *Young v. Commonwealth*, Ky., 585 S.W.2d 378 (1979). The disputed order states explicitly that the total fee requested by Dr. Johnson "is not an unreasonable fee." Thus the sole issue before the trial court in a post-trial "who must pay" hearing was whether the services provided by the doctor were *necessary*. Although not stated in the order, from the transcript of the hearing it is clear that the trial court questioned the necessity of two incidents of service for which Dr. Johnson requested payment. He apportioned liability accordingly, declining to "authorize" those particular items of service for payment by the Henry County Fiscal Court.

The narrow question, then, presented to this Court on appeal is whether the trial judge abused his discretion in refusing to rule that all of the services rendered by Dr. Johnson were necessary. The particular services in question charged for (1) the hours Dr. Johnson spent outside the courtroom waiting to testify by avowal and (2) the time Dr. Johnson spent in the presence of the state's expert psychologist interviewing the defendant, pursuant to the request of defense counsel.

As to the time Dr. Johnson spent waiting outside the courtroom, we affirm the trial court's ruling that those hours of service were not necessary expenses properly chargeable to the county. Although the record is less than clear, it appears to reflect the following. After excluding much of the doctor's testimony, the defense requested that Dr. Johnson be allowed to testify for the record by avowal. The record then reflects a rather confusing exchange between defense counsel and the court as to the precise time when avowal would be taken. The court recalled that it would "not let the jury sit and

---

4. For example, where an indigent defendant is housed in a state correctional facility, expenses incurred in the representation shall be borne by DPA. KRS 31.200(3).

wait while we took the avowal." Defense counsel requested a specific time (presumably) to have the doctor return. The trial court refused to suggest a time, pointing out that the witnesses to be heard were defense witnesses and that counsel would be better positioned to know how long their testimony would take. In short, the matter was never quite settled, and as a result, Dr. Johnson waited and charged a fee (although less than regular) for the time he spent in the hallway.

Although prospectively, we would suggest that issues such as this be resolved by clear communication on the part of the trial court of the course of action an attorney should take, we cannot say that the trial court's judgment refusing to authorize this expense was an abuse of discretion. Defense counsel was told the avowal would be taken when his witnesses finished testifying, and was reminded that "we usually run our jury up to about ... 4:30 or 5:00." Given this, it would have been prudent for defense counsel to have the doctor resume his regular duties and plan to come back at the end of the day. This overall situation was obviously not ideal. But while defense counsel might have been in an uncomfortable situation, it was not untenable. He was not without options. He made the decision to have his witness wait. Without more evidence that the trial court was responsible for the period in question, this Court cannot say that the judge abused his discretion in declining to find that service to be necessary.

■ As stated above, the other service which the trial court refused to authorize as necessary was the presence of Dr. Johnson at the interview of the defendant by the Commonwealth's expert psychiatrist, Dr. Vickie Skelton. During an exchange between the trial court and defense counsel regarding the necessity of this service, the trial court based its ruling on a purported statement *by Dr. Johnson* that he did not need to be present when Dr. Skelton examined the defendant. He also reproached counsel, suggesting that counsel's motive in directing Dr. Johnson to be present during the interview with the state's psychiatrist was to "successfully delay this trial again." We find this ruling based on the above reasons to constitute an abuse of discretion.

KRS 504.070 provides for the prosecution to move for or the trial court to order a mental examination of the defendant at a state facility, when a defendant intends to introduce evidence of his mental illness at the trial. KRS 504.080 sets forth procedures to be followed when such an examination is ordered. Subsection (5) of that statute expressly permits the service (performed here by Dr. Johnson) which this trial court refused to authorize as necessary. "A psychologist or psychiatrist retained by the defendant shall be permitted to participate in any examination under this chapter." KRS 504.080(5).

In view of this statute, we believe that whether a defendant avails himself of this opportunity is strictly a matter of legal strategy to be decided by defendant and his counsel. It is not a question for the defense expert to decide; nor is it a question for the trial court. The statute not only permits the defense expert to be present, but it mandates that the expert's presence be allowed. In this case, Dr. Johnson was present at the defendant's interview with Dr. Skelton *as provided by the statute.* Evidently the legislature envisioned circumstances in which a defense expert's presence at an interview with an opposing expert is important enough to provide for in the law. We are unwilling to uphold the trial judge's ruling that the defendant's availing himself of what the law provides in his interest is not a necessary expense.

■ We also take this opportunity to offer a bit of guidance to trial courts for the purpose of future determinations of what constitutes a reasonable and necessary indigent expense. In KRS 31.110(1)(a), it is stated that a needy defendant is entitled: To be represented by an attorney to the same extent as a person having his own counsel is so entitled. While this certainly cannot mean that an indigent defendant is entitled to have any and all defense-related services, scientific techniques, etc., that a defendant with unlimited resources could employ, we think it is a useful standard as a starting point. At a minimum, a service or facility the use of which is provided for by statute should be considered by a trial court, as a matter of law, to be "reasonable and necessary."

■ Furthermore, we cannot overstate the importance of the process of *advance authorization*. With this opinion, we hold that it is the duty of trial counsel (as counsel did in this case) to move for advance authorization of expenses which he considers properly chargeable to the county under the law as we have stated it. Likewise, we declare it to be the duty of the trial court to attempt to specifically and timely find that an expense is "reasonable and necessary," or not. Employing the KRS 31.110(1)(a) guideline suggested above, this determination should be made in accordance with other applicable law and independently of the question of who must pay. If a trial judge is unable to grant or deny pre-authorization, he must state his reasons in writing for the record.

The object, of course, is to significantly lessen the need for post-trial proceedings to determine whether services already provided were reasonable and necessary.[5] The advantages to all parties are obvious. A before-the-fact ruling ensures prompt payment to individuals or facilities to whom compensation is due. (An expert witness should not "have a dog in this fight," and be forced to hire a lawyer to represent his interests at a post-trial hearing, as happened here.) It also eliminates the risk a public advocate faces in deciding whether to incur an expense absent pre-authorization. We suspect it will reduce the number of "fishing expeditions" in which the defense may be tempted to engage. By now, the point should be clear.

Finally, and perhaps most importantly, we answer the question with which this case began: by what right of authority can the trial judge assess DPA for the expense of Dr. Johnson's "service" of waiting outside the courtroom? It is true that "[i]n actions involving the Commonwealth, the trial court may assess costs against the State, its officers, and its agencies, but the fees shall be imposed *only to the extent permitted by law.*" *Department for Human Resources v. Paulson,* Ky.App., 622 S.W.2d 508, 509 (1981), citing CR 54.04. (Emphasis added). By our holding, in this case, that the Jefferson Circuit Court did not abuse its discretion in

ordering DPA to pay Dr. Johnson's fee for the period he waited outside the courtroom, we are declaring what is permissible by law. In other words, fees incurred by a public advocate (either local or state) which are not reasonable and necessary are properly chargeable to the agency which authorized the expense. The underlying determination of course, is appealable and, if parties proceed in the manner described above, will be properly preserved for review.

For the above reasons, the trial court in *McCracken County and McCracken County Fiscal Court v. Graves* is affirmed. In the case of *Department for Public Advocacy v. Shadoan,* we affirm in part and reverse in part. The case is hereby remanded for an order of liability allocation not inconsistent with this opinion.

LAMBERT, LEIBSON, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

SPAIN, J., files a separate concurring opinion in which LAMBERT and WINTERSHEIMER, JJ., join.

STUMBO, J., files a separate opinion concurring in part and dissenting in part.

SPAIN, Justice, concurring.

Although I concur with the results reached by the Majority in the McCracken County case, as well as with the entire opinion applicable to the Jefferson Circuit Court case, I am motivated by a sense of frustration to write this short concurring opinion. My frustration is but a reflection of that feeling expressed herein by the McCracken County Fiscal Court which, I am certain, is shared by other fiscal courts similarly situated. This feeling results from the holding herein following the holding of ten years ago in *Perry County Fiscal Court v. Commonwealth,* Ky., 674 S.W.2d 954 (1984), that *all* counties are directed by the Kentucky General Assembly through KRS 31.185, to pay all reasonable fees for necessary expert witnesses in the defense of indigent defendants, notwithstanding the fact that many such counties have elected *not* to adopt a local

---

**5.** Post-trial proceedings will sometimes be necessary for the purpose of determining whether a

pre-authorization order was complied with.

plan providing for the representation of such needy defendants pursuant to KRS Chapter 31. While it seems reasonable to expect that if a county *has* elected to adopt such a local plan, for whatever reason, that it should concomitantly be responsible for reasonable fees of necessary expert witnesses, it defies logic to reach the same conclusion where a county elects to allow the Kentucky Public Advocate to provide for the representation of needy defendants in that county. Where such a responsibility rests with the Department for Public Advocacy, then clearly, in all fairness, the responsibility to pay reasonable fees for necessary expert witnesses ought also to lie with the Department. The General Assembly ought to clarify this matter by amendment to KRS Chapter 31 at its earliest opportunity.

LAMBERT and WINTERSHEIMER, JJ., join this concurring opinion by SPAIN, J.

STUMBO, Justice, concurring in part, and dissenting in part.

I concur with the majority opinion in every respect save one. In my opinion, the trial court abused its discretion in ruling that the hours Dr. Johnson spent waiting to testify by avowal was unnecessary.