COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES, Appellant

v.

SAINT JOSEPH HEALTH SYSTEM, INC. d/b/a Saint Joseph Martin; Saint Joseph Health System, Inc. d/b/a Saint Joseph Berea; James B. Haggin Memorial Hospital, Inc.; Carroll County Memorial Hospital; Woodford Hospital, LLC d/b/a Bluegrass Community Hospital; Community United Methodist Hospital, Inc. d/b/a Methodist Hospital Union County; Nicholas County Hospital Corporation; Casey County, Kentucky d/b/a Casey County Hospital; Russell County, Kentucky d/b/a Russell County Hospital; New Horizons Health Systems, Inc. d/b/a New Horizons Medical Center; The Medical Center at Franklin, Inc.; Saint Elizabeth Medical Center, Inc. d/b/a Saint Elizabeth Grant; Jane Todd Crawford Memorial Hospital, Inc.; Appalachian Regional Healthcare, Inc. d/b/a McDowell ARH; Breckingridge Memorial Hospital, Inc.; Livingston Hospital & Healthcare Services, Inc.; ARH Mary Breckingridge Health Services, Inc.; Appalachian Regional Healthcare, Inc. d/b/a Morgan County ARH; Bowling Green–Warren County Community Hospital Corporation d/b/a the Medical Center at Scottsville, Appellees

NO. 2015-CA-001356-MR

Court of Appeals of Kentucky.

MAY 19, 2017; 10:00 A.M.

BRIEFS FOR APPELLANT: Catherine York, Frankfort, Kentucky.

BRIEF FOR APPELLEES: Stephen R. Price, Louisville, Kentucky.

BRIEF FOR APPELLEES: Matthew R. Klein, Crestview, Kentucky.

BRIEF FOR APPELLEES: William L. Yocum, Kansas City, Missouri.

BEFORE: KRAMER, CHIEF JUDGE; COMBS AND J. LAMBERT, JUDGES.

## OPINION

COMBS, JUDGE:

The Commonwealth of Kentucky, Cabinet for Health and Family Services ("CHFS") (and its included agency, the Department for Medicaid Services ("DMS")) appeals from an order of the Franklin Circuit Court entered August 7, 2015 addressing CHFS's practice of reimbursing Critical Access Hospitals (CAHs)[1]

---

1. Appellees named in this appeal include the following CAHs: Saint Joseph Health System, Inc. d/b/a Saint Joseph Martin; Saint Joseph Health System, Inc. d/b/a Saint Joseph Berea; James B. Haggin Memorial Hospital, Inc.; Carroll County Memorial Hospital; Woodford Hospital, LLC d/b/a Bluegrass Community Hospital; Community United Methodist Hospital, Inc. d/b/a Methodist Hospital Union County; Nicholas County Hospital Corporation; Casey County, Kentucky d/b/a Casey County Hospital; Russel County, Kentucky

for outpatient laboratory services provided to Medicaid patients at the reduced level designated as the Medicare technical component rate, rather than the full Medicare reimbursement rate of 101% pursuant to KRS[2] 216.380(13). For the following reasons, we affirm.

## I. Factual and Procedural Background.

CHFS, through DMS, is the state agency tasked with the administration and oversight of Kentucky's Medicaid program. All of the appellees are CAHs that provide Medicaid services.[3] Section 13 of KRS 216.380, which governs CAHs, states as follows:

The Cabinet for Health and Family Services and any insurer or managed care program for Medicaid recipients that contracts with the Department for Medicaid Services for the receipt of Federal Social Security Act Title XIX funds shall provide for reimbursement of services provided to Medicaid recipients in a critical access hospital at rates that are at least equal to those established by the Federal Health Care Financing Administration or Centers for Medicare and Medicaid Services for Medicare reimbursement to a critical access hospital. (Internal footnote omitted).

In order to effectuate that payment scheme, CHFS has made interim estimated payments to CAHs based on the cost ratios of the previous years. As that year's cost reports became available for the rate year at issue, CHFS would determine the CAH's actual costs, multiply by 1.01, and settle with the CAH for the difference between the interim payments and 101% of the CAH's costs, either settling a deficit payment or recouping any overpayments. However, beginning in 2009, CHFS changed its reimbursement scheme and began making interim payments to CAHs at the rate set by the Medicare technical component rate for outpatient laboratory services at Acute Care Hospitals, which resulted in an underpayment to CAHs based on the 101% reimbursement. However, CHFS no longer made the adjusted payment once the actual cost report became available.

In 2011, the federal Centers for Medicare and Medicaid Services ("CMS") approved Kentucky State Amendment Plan ("SPA")[4] 08-011, submitted in September

d/b/a Russell County Hospital; New Horizons Health Systems, Inc. d/b/a New Horizons Medical Center; The Medical Center at Franklin, Inc.; Saint Elizabeth Medical Center, Inc. d/b/a St. Elizabeth Grant; Jane Todd Crawford Memorial Hospital, Inc.; Appalachian Regional Healthcare, Inc. d/b/a McDowell ARH; Breckinridge Memorial Hospital, Inc.; Livingston Hospital & Healthcare Services, Inc.; ARH Mary Breckinridge Health Services, Inc.; Appalachian Regional Healthcare, Inc. d/b/a Morgan County ARH; and Bowling Green-Warren County Community Hospital Corporation d/b/a the Medical Center at Scottsville.

2. Kentucky Revised Statutes.

3. CAHs are hospitals that primarily operate in underserved and rural areas that have no access to full service acute care hospitals. The primary eligibility requirements for CAHs are: it must have 25 or fewer acute care inpatient beds; it must be located more than 35 miles from another hospital; it must maintain an annual average length of stay of 96 hours or less for acute care patients; and it must provide 24/7 emergency care services. CENTERS FOR MEDICARE & MEDICAID SERVICES, *Critical Access Hospital*, 1, 2 (Feb. 2016), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/CritAccessHospfctsht.pdf.

4. In order to be eligible for Medicaid funds, each state must submit a Medicaid plan to CMS, pursuant to 42 U.S.C. § 1396a, which details how that state will administer its Medicaid program, and sets forth the groups to be covered, services provided, methodologies for reimbursement to providers, and other ad-

2008, and effective December 5, 2008, formally implementing new outpatient hospital reimbursement methodology which resulted in reimbursement at each fiscal year's end equaling 95% of a facility's total outpatient costs incurred. Section VIII(C)(1) of the SPA states: "[t]he department shall reimburse for outpatient hospital services in a critical access hospital as established in 42 CFR 413.70(b) through (d)." Section VIII(C)(3) continues: "[i]n accordance with 1903(i)(7), Outpatient laboratory services will be paid at the Medicare technical component rate."

On May 23, 2013, the associate regional administrator of CMS sent a letter to CHFS to "provide technical assistance regarding the Upper Payment Limit (UPL) for clinical diagnostic laboratory test and services performed in the hospital outpatient setting." The letter stated that

[w]ith regard to the clinical diagnostic laboratory tests and services rendered by [CAHs], the payment limitation at section 1903(i)(7) applies and states may not pay more, on a per test basis, than the amount that would be paid under section 1833(h) of the Act. In the event the Medicaid payment for clinical diagnostic laboratory tests at CAHs, on a per-test basis, exceeds the limit implemented via section 1903(i)(7) of the Act, then no federal matching funding for that excess is allowable (and the state would have to return any federal share claimed in excess). If the Medicaid payment is less than that limit, then the state could pay CAHs more to the extent consistent with the approved State Medicaid plan, up to the Section 1903(i)(7) limit. In comparing these payments, it is our understanding that the Medicare payment for clinical diagnostic

ministrative details. The plan must be approved prior to receiving federal funds. Whenever a state intends to make a change to

tests at CAHs is 101% of the CAH's costs for those tests, calculated using Medicare cost accounting principles.

Each CAH disputed these lower payments by CHFS, and DMS affirmed the original settlement amount in each case. The Division of Administrative Hearings assigned each appeal to various Hearing Officers, but the parties agreed to consolidate the appeals with a single Hearing Officer. The parties agreed to submit briefs on the issue in place of a hearing, and all parties entered into stipulations. The Hearing Officer for this case issued a Recommended Order, finding that both federal law and state law support the 101% reimbursement, but "reluctantly" concluded otherwise, determining that CAHs be reimbursed at the Medicare technical component rate because the "highest deference is due to [CMS's] interpretation of the law which they enforce when the agency is empowered to promulgate regulations." The Recommended Order continued:

This is a reluctant conclusion because the May 23, 2013 letter acknowledges that CMS reimburses CAHs for 101% of their costs for the services in question[ ] while mandating that DMS not do the same. Unfortunately for Appellants the extent to which the CMS mandate is inconsistent with any governing statute it is only the applicable state statute. CMS' mandate is not manifestly contrary to the federal statutes (based on their interpretation) and if there are any inconsistencies between state and federal law, the state law is pre-empted.

Ultimately, the Hearing Officer concluded that the "mandate from CMS that is confirmed in the May 23, 2013 letter and that led to SPA 08-011 and the creation of 907

its Plan, the state must submit a SPA to CMS for review and approval.

KAR[5] 10:015 Section 5 is CMS denying FFP for Section 4 of this regulation and disapproving the provision. Thus, it is null and void."

Each party timely filed exceptions to the Hearing Officer's Recommended Order. The Secretary of CHFS entered a Final Order in September 2014 affirming CHFS's practice of reimbursing CAHs for outpatient laboratory services provided to Medicaid patients at the reduced level designated by the Medicare technical component rate rather than the 101% Medicare reimbursement for the same laboratory procedures. The Secretary held that with respect to the Federal statutes that

> actually apply to Medicaid reimbursement for outpatient clinical laboratory tests ... there is no conflict with any other provision of federal law. Having no conflict, it is not necessary to rely upon CMS's "interpretation" of the federal law to reach the conclusion that the Federal law requires that all outpatient clinical laboratory tests must be paid at the Medicare-established technical component rate as set out in 907 KAR 10:015 Section 5.... Having established that the Federal Medicaid law clearly limits the reimbursement for outpatient clinical laboratory tests, regardless of the category of hospital involved, the only issue remaining is whether the Cabinet's regulation is invalid because it conflicts with KRS 216.380(13).... I interpret KRS 216.380(13) as covering outpatient services and 907 KAR 10:015 Section 5, adopted pursuant to KRS 205.520(3), as covering outpatient laboratory services in order to give effect to both statutes and the reimbursement regulation.

On appeal, the Franklin Circuit Court's Opinion and Order reversed the Final Order of the Secretary, finding that KRS 216.380(13) is clear and unambiguous that the CAHs are entitled to reimbursement for outpatient laboratory services provided to Medicaid recipients at 101% of their costs since the statute provides that CHFS shall pay CAHs rates for Medicaid services at least equal to the rates the CMS pays CAHs for Medicare services. The circuit court was not persuaded that the 2008 approval of the SPA constituted a CMS interpretation that was entitled to deference; rather, the court found that since CHFS does not dispute and has stipulated that CMS pays CAHs 101% of their costs for these outpatient laboratory services for Medicare recipients, CHFS must pay at least that amount for Medicaid recipients in order to be compliant with KRS 216.380(13), Section 1834(g) of the Social Security Act ("SSA"), and 42 U.S.C.[6] § 1395m(g)(1) and 42 C.F.R.[7] § 413.70(b)(7). CHFS now appeals that opinion and order.

## II. Standard of Review.

KRS 13B.150 sets forth the standard of review for the appeal of an administrative agency decision, stating that the reviewing court is to "be confined to the record," and that:

> (2) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:
> (a) In violation of constitutional or statutory provisions;

---

5. Kentucky Administrative Regulations.

6. United States Code.

7. Code of Federal Regulations.

(b)  In excess of the statutory authority of the agency;

(c)  Without support of substantial evidence on the whole record;

(d)  Arbitrary, capricious, or characterized by abuse of discretion;

(e)  Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;

(f)  Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or

(g)  Deficient as otherwise provided by law.

"Judicial review of an administrative decision is limited to a determination of whether the agency acted within the constraints of its statutory powers, whether the agency's procedures afforded procedural due process, and whether the agency's decision is supported by substantial evidence of record." *Carreer v. Cabinet for Health & Family Servs.*, 339 S.W.3d 477, 481 (Ky. App. 2010). "In its role as a finder of fact, an administrative agency is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses, including its findings and conclusions of fact. However, this Court is authorized to review issues of law on a de novo basis." *Aubrey v. Office of Attorney Gen.*, 994 S.W.2d 516, 519 (Ky. App. 1998) (internal citation omitted).

In *Hagan v. Farris*, 807 S.W.2d 488, 490 (Ky. 1991), the Kentucky Supreme Court held that, "[i]n most cases, an agency's interpretation of its own regulations is entitled to substantial deference[;]" however,

[a]n agency must be bound by the regulations it promulgates. Further, the regulations adopted by an agency have the force and effect of law. An agency's interpretation of a regulation is valid, however, only if the interpretation complies with the actual language of the regulation. KRS 13A.130 prohibits an administrative body from modifying an administrative regulation by internal policy or another form of action. (Internal citations omitted).

Since the parties entered into stipulations of fact and the procedural history of this case implicates KRS 13A.130, we review *de novo* the questions of law presented.

### III.  Analysis.

CHFS makes two arguments on appeal. First, CHFS argues that the circuit court erred in finding that the Secretary's Order was not supported by law since the Secretary's interpretation of both federal and state law was not erroneous. Second, CHFS argues that the circuit court erred by failing to give deference to the agency's interpretations of regulations and statutes.

### A.  Federal Law

■  First, CHFS argues the circuit court erred in finding that the Secretary's Final Order was not supported by federal law. CHFS contends that the interpretation to reimburse CAHs at the Medicare technical component rate, not 101%, is supported by federal law. CHFS argues that Section 1903(i)(7) SSA, or 42 U.S.C. § 1396b(i)(7), applies to CAHs as they are not exempted from this section:

Payment under the preceding provisions of this section shall not be made ... with respect to any amount expended for clinical diagnostic laboratory tests performed by a physician, independent laboratory, or hospital, to the extent such amount exceeds the amount that would be recognized under section 1833(h) [1395*l*(h)] of this title for such tests performed for an individual enrolled under part B of subchapter XVIII of this chapter[.]

Section 1833 [42 U.S.C. § 1395*l*(a)] states in relevant part,

Except as provided in section 1876 [1395mm] of this title, and subject to the succeeding provisions of this section, there shall be paid from the Federal Supplementary Medical Insurance Trust Fund, in the case of each individual who is covered under the insurance program established by this part and incurs expenses for services with respect to which benefits are payable under this part, amounts equal to

....

(6) in the case of outpatient critical access hospital services, the amounts described in section 1834(g) [42 U.S.C. § 1395m(g).]

CHFS urges this Court to consider Section 1833(h) of the SSA, or 42 U.S.C. § 1395*l*(h), which states "the Secretary shall establish fee schedules for clinical diagnostic laboratory tests ... for which payment is made under this part[.]" We disagree that the reimbursement to CAHs is governed by this section. CAHs are not hospitals for which "payment is made under this part," and the fee schedules referenced in section 1833(h) apply generally to **other** hospitals, not CAHs; Section 1833(h) applies to hospitals as defined in section 1886(d)(5)(D)(iii)   [1395ww(d)(5)(D)(iii) ].[8] Rather, Section 1834(g), referenced in Section 1833(h)(6), is the correct section governing outpatient critical access hospital services of CAHs, and requires 101% reimbursement. The circuit court correctly followed the statutory trail to section 1834(g)

[42 U.S.C. § 1395m(g) ], titled "Payment For Outpatient Critical Access Hospital Services," which provides "[t]he amount of payment for outpatient critical access hospital services of a critical access hospital is equal to 101 percent of the reasonable costs of the hospital in providing such services, unless the hospital makes the election under paragraph (2)." 42 U.S.C. § 1395m(g)(1). Section (g)(4) of that same title provides.

No coinsurance, deductible, copayment, or other cost-sharing otherwise applicable under this part shall apply with respect to clinical diagnostic laboratory services furnished as an outpatient critical access hospital service. Nothing in this subchapter shall be construed as providing for payment for clinical diagnostic laboratory services furnished as part of outpatient critical access hospital services, other than on the basis described in this subsection. For purposes of the preceding sentence and section 1395x(mm)(3) of this title, clinical diagnostic laboratory services furnished by a critical access hospital shall be treated as being furnished as part of outpatient critical access services without regard to whether the individual with respect to whom such services are furnished is physically present in the critical access hospital[.]

Pursuant to Section 1834(g)(4), CAHs are to be reimbursed differently than other

**8.** Section   1886(d)(5)(D)(iii) [1395ww(d)(5)(D)(iii) ] states

(iii) For purposes of this subchapter, the term "sole community hospital" means any hospital—

(I) that the Secretary determines is located more than 35 road miles from another hospital,

(II) that, by reason of factors such as the time required for an individual to travel to the nearest alternative source of appropriate inpatient care (in accordance with standards

promulgated by the Secretary), location, weather conditions, travel conditions, or absence of other like hospitals (as determined by the Secretary), is the sole source of inpatient hospital services reasonably available to individuals in a geographic area who are entitled to benefits under part A of this subchapter, or

(III) that is located in a rural area and designated by the Secretary as an essential access community hospital under section 1395i-4(i)(1) of this title as in effect on September 30, 1997.

hospitals, and outpatient laboratory services in CAHs are to be treated as outpatient services. We believe that Section 1834 is the correct section governing the reimbursement to CAHs for outpatient laboratory services to Medicaid recipients, and this interpretation of Section 1834 is consistent with federal regulation.

In further support of federal law interpreting this reimbursement rate to be 101%, 42 C.F.R. 413.70(b), titled "Payment for Outpatient Services Furnished by CAH" details that:

> payment for outpatient services of a CAH is 101 percent of the reasonable costs of the CAH in providing CAH services to its outpatients, as determined in accordance with section 1861(v)(1)(A) of the Act and the applicable principles of cost reimbursement in this part and in part 415 of this chapter[.]

42 C.F.R. 413.70(b)(2)(i). Section (7) of this title, "Payment for Clinical Diagnostic Laboratory Tests Included as Outpatient CAH Services," provides: "[s]ubject to the provisions of paragraphs (b)(7)(iii) through (b)(7)(vi) of this section, payment to a CAH for clinical diagnostic laboratory tests will be made at 101 percent of reasonable costs of the services as determined in accordance paragraph (b)(2)(i) of this section." 42 C.F.R. 413.70(b)(7)(ii). Even the CMS website provides further support that CAHs be reimbursed at 101% of reasonable costs for outpatient laboratory services provided to Medicaid patients.[9] We therefore conclude that federal law, Section 1834 of the SSA and 42 C.F.R. 413.70, supports the reimbursement rate of 101% to CAHs for these outpatient laboratory services to Medicaid recipients.

### B. State Law

■ Second, CHFS argues that state law supports its decision to reimburse CAHs at the Medicare technical component rate, not 101%.

Pursuant to KRS 216.380(13), CHFS is required to reimburse for services provided to Medicaid recipients in CAHs "at rates that are at least equal to those established by the Federal Health Care Financing Administration or Centers for Medicare and Medicaid Services for Medicare reimbursement to a critical access hospital." CHFS contends that KRS 216.380(13) does not require reimbursement at 101%, but that this rate is merely one of many established by CMS. CHFS argues that since "it is the policy of the Commonwealth to take advantage of all federal funds that may be available for medical assistance" pursuant to KRS 205.520(3), and since CMS has made clear that no further funding will be available for payments made beyond the technical component rates in the May 23, 2013 letter, to reimburse at the higher rate is against state law and policy.

■ However, state law and regulation offers ample support for a reimbursement of 101% to CAHs. "When the words of the statute are clear and unambiguous and express the legislative intent, there is no room for construction or interpretation and the statute must be given its effect as written." *McCracken Cnty. Fiscal Court v. Graves*, 885 S.W.2d 307, 309 (Ky. 1994) (internal quotations and citations omitted). Further,

> when a court reviews an agency's construction of the statute which it adminis-

---

**9.** "Critical access hospitals are generally paid for outpatient laboratory tests on a reasonable cost basis, instead of by the fee schedule, as long as the lab service is provided to a CAH outpatient." *Clinical Laboratory Fee Schedule*, CENTERS FOR MEDICARE AND MEDICAID SERVICES, https://www.cms.gov/medicare/medicare-fee-for-service-payment/clinicallabfeesched/ (last modified Nov. 18, 2016 8:39 AM).

ters, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). Here, KRS 216.380(13) explicitly demonstrates the legislature's intent for the reimbursement of outpatient laboratory services provided to Medicaid recipients in a CAH to be **at least equal** to those paid for Medicare reimbursement. CHFS has stipulated that, at all times relevant to this case, the Medicare reimbursement to CAHs for outpatient laboratory services was 101%. If we give deference to CHFS's interpretation, we would be violating the clear intent of the statute to make the reimbursement rate for Medicaid recipient at least equal to that of Medicare for the same services.[10]

Next, CHFS argues that 907 KAR 10:015 Section 5 applies to all hospitals, including CAHs, which is consistent not only with the advice of CMS, but also with KRS 216.380(13). Section 5, titled, "Outpatient Hospital Laboratory Service Reimbursement," states that:

(1) The department shall reimburse for an in-state or out-of-state outpatient hospital laboratory service:

(a) At the Medicare-established technical component rate for the service in accordance with 907 KAR 1:028 if a Medicare-established component rate exists for the service; or

(b) By multiplying the facility's current outpatient cost-to-charge ratio by its billed laboratory charges if no Medicare rate exists for the service.

(2) Laboratory service reimbursement, in accordance with subsection (1) of this section, shall be:

(a) Final; and

(b) Not settled to cost.

(3) An outpatient laboratory hospital laboratory service shall be reimbursed in accordance with this section regardless of whether the service is performed in an emergency room setting or in a nonemergency room setting.

The Secretary determined that Section 5, not Section 4, applies to outpatient laboratory services, holding that Section 5 covers outpatient laboratory services, whereas Section 4 governs outpatient hospital services. Section 4, titled "Critical Access Hospital Outpatient Service Reimbursement," mandates

(1) The department shall reimburse for outpatient hospital services in a critical access hospital as established in 42 C.F.R. 413.70(b) through (d).

(2) A critical access hospital shall comply with the cost reporting requirements established in Section 6 of this administrative regulation.

The Secretary continued that in order to give effect to both Section 5 of 907 KAR 10:015 and KRS 216.380(13), the Secretary interpreted the statute as covering outpatient services whereas Section 5 covered outpatient laboratory services. We reject this interpretation. Section 5 generally describes reimbursement of in-state and out-of-state outpatient laboratory services to hospitals, whereas Section 4 specifically

---

**10.** Additionally, we note that the Hearing Officer incorrectly concluded that the May 23, 2013, letter led to the SPA and thus 907 KAR 10:015, since the approval of the SPA preceded the letter. Therefore, his conclusion that CHFS is complying with KRS 216.380(13) by reimbursing at the Medicare technical component rate is unfounded.

governs how CAHs are to be reimbursed for outpatient hospital services. "The applicable rule of statutory construction where there is both a specific statute and a general statute seemingly applicable to the same subject is that the specific statute controls." *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354, 361 (Ky. 2005) (internal quotations and citations omitted). Therefore, Section 4 controls this specific type of reimbursement, and pursuant to Section 4, as established in 42 C.F.R. 413.70(b) through (d), CAHs are to be reimbursed at 101%. We conclude that KRS 216.380(13) and 907 KAR 10:015 Section 4 support a reimbursement rate of 101% to CAHs for these services to Medicaid recipients, which is consistent with federal law.

*C.   Administrative letter and SPA*

Last, CHFS argues that the circuit court failed to give appropriate deference to the agency's interpretation of its own governing statutes: the May 23, 2013 letter from the regional administrator of CMS and the Kentucky SPA 08-011. We disagree.

■   First, this letter lacks the force of law, and cannot be considered a mandate from CMS. *Bd. of Trustees of Judicial Form Ret. Sys. v. Attorney Gen. of Commonwealth*, 132 S.W.3d 770, 786-87 (Ky. 2003) (holding that an opinion letter from the deputy commissioner of the Kentucky Retirement Systems regarding the construction of the language used in an amendment to Judicial Retirement Act is "[not] entitled to the type of deference afforded an administrative agency's construction of a statute that it is charged with implementing"); *see also Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S.Ct. 1655, 1662, 146 L.Ed.2d 621 (2000) (holding that "an interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking. Interpre-

tations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference."); *Reno v. Koray*, 515 U.S. 50, 61, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995) (holding that an internal agency guideline, which is not "subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment," is entitled only to "some deference"). Thus, we reject the notion that this letter requires the high level of deference afforded to agency interpretation of its own governing statutes by *Chevron*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694. In fact, in the Final Order, even the Secretary rejected this argument in favor of restating the issue to be whether 907 KAR 10:015 Section 5 complies with federal and state law. This letter does not require deference, and as discussed above, we reject the Secretary's interpretation of Section 5 governing this specific reimbursement type to CAHs.

■   Second, CHFS acknowledges that a SPA cannot trump a statute or regulation; however CHFS argues that the approval of the SPA and inherent interpretation of federal law are entitled to deference. This SPA was not incorporated by reference into any regulation or promulgated as law. "[A] 'rule' is not valid unless it is adopted in substantial compliance with the provisions of the [Act in question]." *Women's & Children's Hosp. v. State Dept. of Health & Hosps.*, 984 So.2d 760, 771 (La. App. 1 Cir. 2008) (holding a State Plan Amendment that had a substantial effect on hospitals' rate of Medicaid reimbursement was an unenforceable rule under the Louisiana Administrative Procedure Act (LAPA) since the [Department] failed to follow the required procedures

under the LAPA to effectively promulgate the rule).

Furthermore, KRS 13A.130 dictates that

(1) An administrative body shall not by internal policy, memorandum, or **other form of action:**

(a) Modify a statute or administrative regulation;

(b) Expand upon or limit a statute or administrative regulation; or

(c) Except as authorized by the Constitution of the United States, the Constitution of Kentucky, or a statute, expand or limit a right guaranteed by the Constitution of the United States, the Constitution of Kentucky, a statute, or an administrative regulation.

(2) Any administrative body memorandum, internal policy, or **other form of action** violative of this section or the spirit thereof is null, void, and unenforceable. (Emphasis added).

To give the effect of promulgated law to this SPA would be to give an "other form of action" the power to modify both state statute and administrative regulation in violation of KRS 13A.130. The circuit court did not err in not giving deference to this SPA.

## IV. Conclusion.

The Franklin Circuit Court did not err, and we also conclude that the proper reimbursement rate for CAH outpatient laboratory tests is 101%. For the foregoing reasons, the order of the Franklin Circuit Court is affirmed.

ALL CONCUR.