RENDERED:  JUNE 9, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1123-DG

B.D.P.                                                                   APPELLANT


ON DISCRETIONARY REVIEW
FROM HENDERSON CIRCUIT COURT
v.          HONORABLE KAREN LYNN WILSON, JUDGE
ACTION NO. 22-XX-00003


COMMONWEALTH OF KENTUCKY;
 J.P.; AND T.P.                                                          APPELLEES


OPINION
REVERSING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; KAREM AND MᴄNEILL, JUDGES.

KAREM, JUDGE:  This appeal arises from proceedings under the Matthew Casey

Wethington Act for Substance Abuse Intervention ("Casey's Law"), Kentucky

Revised Statutes ("KRS") 222.430-222.437.  Casey's Law "provides a mechanism

for a family member or friend to secure involuntary drug treatment for a loved one

struggling with substance abuse."  *S.W. v. S.W.M.*, 647 S.W.3d 866, 873 (Ky. App.

2022), *discretionary review denied* (Aug. 16, 2022). Upon petition by B.D.P.'s parents, the Henderson District Court conducted a hearing and ordered the appellant, B.D.P., to undergo involuntary treatment for a substance abuse disorder. Its order was affirmed by the Henderson Circuit Court. B.D.P. sought discretionary review, which this Court granted. B.D.P. raises two arguments: (1) that the trial court lacked subject matter jurisdiction to order him into treatment and (2) there was insufficient evidence to support its finding that he presented an imminent danger to himself or others. After careful review, we reverse with instructions to remand the case to the trial court for a re-hearing.

## BACKGROUND

### i. The procedural framework of Casey's Law

Under the terms of Casey's Law, a "spouse, relative, friend, or guardian" initiates an involuntary treatment action by filing a verified petition in district court. KRS 222.432(1) and (3). The district court reviews the allegations contained in the petition and examines the petitioner under oath to determine if there is probable cause to believe the respondent (the individual for whom treatment is sought) should be ordered to undergo treatment. KRS 222.433(1) and (2). If the district court finds probable cause, it sets a final hearing, appoints counsel for the respondent, and directs two qualified health professionals, one of whom must be a physician, to evaluate the respondent. KRS 222.433(2)(a)-(c).

The qualified health professionals are required to certify their findings to the court and may be subject to cross-examination at the final hearing. KRS 222.433(2)(c). If, at any time after the petition is filed, the court finds that there is no probable cause to continue treatment or the petitioner withdraws the petition, the proceedings are to be dismissed. KRS 222.433(4).

After conducting the final hearing, the court may order the respondent to undergo treatment only if it finds by proof beyond a reasonable doubt that the respondent:

> (1) Suffers from substance use disorder;
>
> (2) Presents an imminent threat of danger to self, family, or others as a result of a substance use disorder, or there exists a substantial likelihood of such a threat in the near future; and
>
> (3) Can reasonably benefit from treatment.

KRS 222.431.

The court may order the treatment for a period not to exceed sixty consecutive days or a period not to exceed 360 days. KRS 222.433(3).

If the respondent fails to undergo the ordered treatment, the respondent may be placed in contempt of court. KRS 222.433(3).

### ii. Factual and procedural background of B.D.P.'s case

B.D.P.'s parents filed a petition on April 22, 2022, seeking an order compelling their twenty-one-year-old son into a drug treatment program. As

grounds for their belief that he was suffering from a substance use disorder, the

petition stated:

> - Previous Rehab not completed. Continues to use
> Fentanyl.
>
> - Observed under influence: lethargic, moody, vomiting
> every day, lost weight, can't continue job, selling plasma
> & personal items, poor hygiene[,] . . . approx. 9 jobs
> over last year. Observe items for drug use in car. Used
> family members' bank accounts to CashApp to "drug
> dealers."

As grounds for believing B.D.P. presented a danger or threat of danger to himself

or others, the petition stated: "General concern of impact Fentanyl has on his

health and daily living [and] concern of lethality of Fentanyl use[.]"

After holding a preliminary hearing, the trial court found probable

cause to proceed with the Casey's Law petition, based on the testimony of B.D.P.'s

father that B.D.P. was taking Percocet and Fentanyl and had not stayed in rehab.

B.D.P.'s father also testified that B.D.P. had lost twenty-five to thirty pounds, was

awake all night and slept all day, and veered between extremes of being jittery and

nodding off. He testified that B.D.P. had been pawning items to support his drug

habit. He implied that B.D.P. was engaged in criminal activity but expressed a

wish not to incriminate him by testifying any further on this subject. He stated that

B.D.P. had eight jobs in the past year. Because his parents were afraid to let him

drive as he was a danger to himself and others, they drove him to work themselves.

The trial court ordered the parents to set up assessments for B.D.P. with Martha Ridley and Nicole Frields pursuant to KRS 222.433(2)(c), which requires the respondent "to be examined no later than twenty-four (24) hours before the hearing date by two (2) qualified health professionals, at least one (1) of whom is a physician." The qualified health professionals "[s]hall certify their findings to the court within twenty-four (24) hours of the examinations[.]" KRS 222.433(2)(c)1.

Shortly after the preliminary hearing, B.D.P. entered BrightView, an outpatient treatment program. His parents nonetheless decided to move forward with the Casey's Law petition because they wanted an order "with teeth" and for B.D.P. to have accountability. He was examined by Ridley and Frields in preparation for the final hearing on the petition.

Ridley is an advanced practice registered nurse at Deaconess Family Medicine. She completed and signed the certification of qualified health professional form, but it was not notarized. The form requires the person completing it to specify what type of qualified mental health professional they are. Ridley ticked the box for "[a] Physician, licensed under the laws of Kentucky to practice medicine or osteopathy, or a medical officer of the government of the United States while engaged in the performance of official duties." Based on her evaluation of B.D.P., she found he suffered from a substance use disorder and

-5-

could reasonably benefit from treatment. However, notably, she did not believe he was an imminent threat of danger to himself or others and there was not a substantial likelihood of such threat in the near future. As evidence for her belief that he suffers from a substance use disorder, she stated that he used marijuana, alcohol, and mushrooms prior to using Fentanyl. Although B.D.P. does not believe he has a substance use disorder, Ridley reported that it had affected his employment and he was selling plasma for drugs. Although she did not tick the box that he presented an imminent threat of danger to himself or others, she stated under the section soliciting facts for such a belief that "[p]atient can easily overdose on Fentanyl." Under other factors contributing to the need for treatment she reported that he states he is depressed with some anxiety at times but does not know the root cause.

Nicole Frields, a certified alcohol and drug counselor, submitted a notarized certification stating that B.D.P. suffered from drug abuse and, in contrast to Ridley, believed he presented an imminent danger to himself and others. He had self-reported daily Fentanyl use until about two to three weeks before the examination, but she found that he physically appeared to still be using. As grounds for finding a threat of imminent danger, she reported that he admitted intravenous use of Fentanyl, and that he had been enrolled in two different treatment centers in the last three months and left each facility within a week. He

-6-

reported stealing money and was no longer residing with his parents; he was living with his girlfriend who is also addicted to Fentanyl. He currently has pending charges for theft from his girlfriend's father. Frields diagnosed B.D.P. with opioid dependence. Under the section asking for other factors which contributed to the need for treatment she stated that he reported outpatient treatment with suboxone. She commented that "[a]t his age, I would not suggest that as a good form of treatment." BrightView had suggested AA/NA meetings a week ago, but he had not attended any. She concluded: "In my professional opinion, he should be in a long-term, abstinence[-]based program that provides more accountabil[i]ty for his recovery and a better chance at long term sobriety."

At the final hearing, Frields and Ridley testified about their findings. B.D.P.'s only witness was his girlfriend's father, who testified that B.D.P. began living at his house nine days before, right after he checked out of rehab and his daughter "rescued" him. As a condition of living in his home, he required B.D.P. to pass drug tests and seek employment. He testified that he does not supervise B.D.P. throughout the day but that B.D.P. continued to be drug tested by a clinic and that he personally tested him "every week." He testified he had never seen B.D.P. use drugs and that in his opinion he was safe from harm.

B.D.P. argued that the petition should be denied because there was insufficient evidence of imminent danger. He contended that the weight of the

evidence clearly established that he was not a current user, that the qualified health professionals had not found an imminent risk, and he was already in an outpatient treatment program and undergoing regular drug tests and treatment.

In addressing whether there was an imminent risk of harm, the trial court expressed concern that two to three weeks ago, B.D.P. had been using Fentanyl and had left inpatient rehab nine days before. The trial court found the three statutory prerequisites under KRS 222.431 to order B.D.P. into treatment for a period not to exceed 360 days. At the hearing, the trial court specified that if he was dismissed from treatment for cause or left voluntarily, it would issue a bench warrant for contempt.

B.D.P. appealed the decision to the circuit court. He argued for the first time that the trial court lost subject matter jurisdiction over the case because it did not receive two qualified health professional reports that met the minimum requirements of the statute, namely, neither Frields nor Ridley was a physician. B.D.P. also argued that the evidence presented at the hearing was insufficient to find that he met the criterion for treatment under the statute beyond a reasonable doubt.

The circuit court affirmed the judgment in reliance on *Daugherty v. Telek*, 366 S.W.3d 463 (Ky. 2012), which holds that once a court has acquired subject matter and personal jurisdiction, it does not lose that jurisdiction by

misconstruing or erroneously overlooking a statute. The circuit court also held that taking the facts in the light most favorable to the petitioner, the evidence was sufficient to commit B.D.P. for treatment. This appeal by B.D.P. followed.

## ANALYSIS

### Statutory requirement of examination by a physician was not met

The circuit court held correctly that the question in the case at bar is not whether the trial court has jurisdiction over this kind of case; it is whether it exercised its powers correctly. B.D.P. argues that the evidence was insufficient to sustain the finding beyond a reasonable doubt that B.D.P.'s substance abuse disorder presented an imminent threat of harm to himself or others. However, it is impossible to discern the validity of this argument due to the trial court's misapplication of the law. KRS 222.433(2) mandates,

> If, after reviewing the allegations contained in the petition and examining the petitioner under oath, it appears to the court that there is probable cause to believe the respondent should be ordered to undergo treatment, then **the court shall**:
>
> . . . .
>
> (c) **Cause the respondent to be examined** no later than twenty-four (24) hours before the hearing date by two (2) qualified health professionals, **at least one (1)** of whom is a **physician**.

(Emphasis added.)

At the hearing two certified health professionals testified providing conflicting opinions as to whether B.D.P. met the criteria for hospitalization. Ripley testified as an advanced practice register nurse and Frields testified as a certified alcohol and drug counselor. It is undisputed that neither health professional was a physician. The trial court clearly believed the credentials of these witnesses substantially complied with the statute to meet the definition of qualified health professional. The construction and application of statutes is a matter of law, which we review *de novo*. *Travelers Indemnity Company v. Armstrong*, 565 S.W.3d 550, 556 (Ky 2018).

When the words of a statute "are clear and unambiguous and express the legislative intent, there is no room for construction or interpretation and the statute must be given its effect as written." *McCracken County Fiscal Court v. Graves*, 885 S.W.2d 307, 309 (Ky. 1994). The statutory provision in Casey's Law is simple and straightforward. The legislature unequivocally required that at least one of the examiners must be a physician and the term "physician" has a discernable meaning in the law. As promulgated in Kentucky, one must be authorized to practice medicine under the law in any state. KRS 311.1911(20). The trial court failed to follow the clear instructions set out by the legislature and its findings must therefore be set aside.

Because our ruling on the legal procedure of this case is dispositive, there is no reason to address the unpreserved argument made by B.D.P. regarding jurisdiction.

## CONCLUSION

For the foregoing reasons, the Henderson Circuit Court order affirming the Henderson District Court is reversed with instructions to vacate the judgment and remand to district court for a new hearing following the applicable statutory provisions consistent with the Opinion of this Court. However, the petitioners are free to move the district court for a dismissal if they so choose.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Timothy G. Arnold
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Matthew F. Kuhn
Solicitor General of Kentucky

Courtney E. Albini
Assistant Solicitor General
Frankfort, Kentucky